JOHN K. & CATHERINE S. MULLEN BENEVOLENT CORPORATION, APPELLANT, *v.* SCHOOL DISTRICT No. 17 OF BIG HORN COUNTY, RESPONDENT.

(No. 7,354.)

(Submitted March 25, 1935.   Decided April 10, 1935.)

[43 Pac. (2d) 902.]

*Mr. C. C. Cisel* and *Mr. M. J. Lamb,* for Appellant, submitted a brief; *Mr. Lamb* argued the cause orally.

*Mr. C. C. Quinn,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

Plaintiff corporation brought this action in the district court of Big Horn county to recover $1,650 with interest, which sum is alleged to be due to plaintiff from the defendant school district, on fifty-five interest coupons for $30 each.

It appears that on January 15, 1921, the defendant school district issued seventy-five bonds for $1,000 each, bearing interest at the rate of six per cent. per annum, payable on the fifteenth days of January and July in each year, as evidenced by interest coupon notes attached to and made a part of the bonds. The coupons were made payable at the office of the county treasurer of Big Horn county, or at the banking house of Kountze Brothers in New York City, hereinafter called the bank. The bonds were payable to "bearer" and were sold and delivered to Kountze Brothers. Thereafter the bank sold and disposed of the bonds to some third party. The evidence discloses that they were purchased by J. K. Mullen from Bosworth, Chanute & Co., in Denver, Colorado, in March, 1921, and were transferred to the plaintiff corporation on March 30,

1929. It appears that the money to pay the coupons was always sent by the county treasurer to the bank. This was the practice which was followed from the time when the bonds were issued.

From the time it became the owner of the bonds, plaintiff always deposited the interest coupons, when due, in the First National Bank of Denver. That bank then forwarded them to the bank in New York for payment, and in this manner all the coupons which fell due prior to July 15, 1931, were paid.

On May 23, 1931, the county treasurer, according to his custom, transmitted enough money to the bank to pay the interest coupons which were to become due July 15, 1931. Plaintiff deposited its coupons with the First National Bank of Denver on October 6, 1931; thereafter that bank proceeded to present them to the New York bank for payment. This presentment was not made until after October 13, 1931, upon which date that bank had become bankrupt. The coupons were returned to the Denver bank with the advice that, Kountze Brothers having closed its doors, no presentation of the interest coupons could be made. The Denever bank then transmitted them to the county treasurer of Big Horn county for payment, but they were returned without payment. Plaintiff then instituted this action.

The county treasurer testified that he transmitted the interest due on the bonds in question to Kountze Brothers on May 23, 1931; that he had no notice prior to July 15, 1931, that the interest was to be paid to any other than the New York bank; that it did not return the money to him; and that he did not know what disposition was made of the remittance forwarded by him.

The cause was submitted to the court sitting without a jury. The court found generally in favor of the defendant and against plaintiff. From the judgment entered thereon plaintiff appeals.

The controlling question presented for our solution is whether the transmittal of the money by the county treasurer to the New York bank constituted a payment of the interest

coupons so as to bar plaintiff from recovery in this action. Plaintiff contends that it did not, because "(1) the school district having seen fit to make the bonds payable at the banking house of Kountze Brothers at New York City, did thereby make that banking house its agent and was responsible for any dereliction or defalcation of its agent; (2) the interest coupons being negotiable instruments and having all the attributes of commercial paper, the plaintiff was not required to present them to Kountze Brothers for payment on July 15, 1931, the due date, or at any particular time, and cannot be required to suffer the loss resulting from the failure of Kountze Brothers to pay the interest coupon notes."

It will be noted that the coupons in question are payable to bearer and possess all the qualities and incidents of commercial paper. Title to such paper passes by delivery. (See *Kalman* v. *Treasure County,* 84 Mont. 285, 275 Pac. 743, 746.) In the case cited this court, in discussing a similar situation, used the following pertinent language: "The interest coupons in question are made payable to bearer; hence pass by delivery and possess all the qualities and incidents of commercial paper. * * * It is the universal rule that, where commercial paper is made payable at a particular bank, such bank is the agent of the maker and not the holder, the holder not having deposited it at the designated bank for collection." To the same effect is *United States Nat. Bank* v. *Shupak,* 54 Mont. 542, 172 Pac. 324. This rule is supported by the great weight of authority everywhere. (See *Baldwin* v. *Adkerson,* 156 Va. 447, 158 S. E. 864; *Peurifoy* v. *Boswell,* 162 S. C. 107, 160 S. E. 156; *In re Interborough Consolidated Corp.,* (C. C. A.) 288 Fed. 334, 32 A. L. R. 932; *Cheney* v. *Libby,* 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 818; also, 8 C. J. 605, 606; and annotation upon subject in 2 A. L. R. 1381, wherein a long list of cases from numerous jurisdictions is to be found.)

Defendant, however, contends that this rule is not applicable in the instant case, for the reason that plaintiff, by virtue of a long course of dealing, made Kountze Brothers its agent.

There is respectable authority supporting the proposition that in certain instances there may be an exception to the general rule, viz., that through a course of dealing plaintiff might be deemed to have constituted Kountze Brothers its agent for the purpose of receiving payment on the coupons. (See *First Nat. Bank* v. *Hessell,* 133 Wash. 643, 234 Pac. 662; *Galligan* v. *Schapiro,* 82 Colo. 423, 260 Pac. 519; *Wagner* v. *Spaeth,* 36 Wyo. 279, 254 Pac. 123; *Ross* v. *Johnson,* 171 Wash. 658, 19 Pac. (2d) 101; *Fowle* v. *Outcalt,* 64 Kan. 352, 67 Pac. 889.) The rule is well stated in 8 C. J. 598, as follows: "Payment made to the payee of a negotiable bill or note, where he has transferred the instrument before maturity, without requiring the production and surrender of the instrument, is ordinarily insufficient as against the transferee, provided he is a holder in due course. But payment to the payee after the transfer of the instrument is binding on the transferee, where the payee is made the agent of the transferee for collection, or where the money was actually received by the transferee, but not unless the agency is clearly shown, or, if the agency is not proved, unless the transferee is estopped to deny the authority of the payee to collect."

A careful study of the record in this case fails to disclose anything establishing, or tending to establish, that plaintiff had made the New York Bank its agent or had recognized it as such. The facts are quite to the contrary. While it is true that Kountze Brothers' bank was the original purchaser of the bonds from the district, there is nothing to show that it held them for any length of time. It is affirmatively disclosed that it did not sell the bonds with the coupons attached to the plaintiff, but the bonds passed through the hands of at least two intermediate holders. There was never any direct dealing of any kind between plaintiff and Kountze Brothers, except the fact of the transmittal of coupons to it for payment. This cannot be construed as constituting Kountze Brothers the agent of plaintiff, because the district, in the first instance, had made that bank the place of presentment and payment, so that the mere presentation of the coupons there was only equiva-

lent to presenting them direct to the county treasurer. In all of the cases wherein an exception to the general rule has been recognized, there was something to show an independent relation between the holder of the paper and the alleged agent. Here, the only relation of agency shown is between the district and Kountze Brothers. In such circumstances we are forced to hold that this case does not furnish any basis sufficient to create an exception to the general rule.

It is further contended by defendant that, if plaintiff had been diligent in presenting the coupons for payment, it would have suffered no loss, and that its laches in not so doing should be chargeable to it and not to defendant, citing section 8488, Revised Codes 1921. Such contention and the authority cited in support thereof might be very forceful if the paper in question had been checks or bills of exchange, rather than interest coupons. The interest coupons were, in effect, promissory notes. (See sec. 8591, Id., and note; also, *Perry* v. *Norddeutscher Lloyd,* 150 Misc. 73, 268 N. Y. Supp. 525, and 9 C. J. 49, and cases cited.) The law is well settled that the maker of such instruments is not discharged from liability through neglect or delay on the part of the holder in making presentment for payment. (See *Kalman* v. *Treasure County,* supra; *Perry* v. *Norddeutscher Lloyd,* supra; *Fidelity Mutual Life Ins. Co.* v. *Wilkes-Barre & H. R. Co.,* 98 N. J. L. 507, 120 Atl. 734; *Toon* v. *Wapinitia Irr. Co.,* 117 Or. 374, 243 Pac. 554.) It must be remembered that there is a distinction between checks and notes. While the liability of the drawer of a check is secondary, the maker of a note is primarily liable, ·so far as the necessity of presentment for payment is concerned. (*Cashion Gin Co.* v. *Reisch,* 144 Okl. 169, 289 Pac. 701.) "The person 'primarily' liable on an instrument is the person who, by the terms of the instrument, is absolutely required to pay the same. All other parties are 'secondarily' liable." (Sec. 8403, Rev. Codes 1921.) "Presentment for payment is not necessary in order to charge the person primarily liable on the instrument." (Sec. 8477, Id.)

In accordance with the foregoing statutes which are embodied in the Uniform Negotiable Instruments Law, it has been uniformly held that the holder of a negotiable promissory note does not have to make presentment of the same in order that he may have a right of action against the party primarily liable. (*First State Bank of Hilger* v. *Lang,* 55 Mont. 146, 174 Pac. 597, 9 A. L. R. 1139; *Quickenden* v. *Hulbert,* 83 Mont. 501, 272 Pac. 994; *Binghampton Pharmacy* v. *First National Bank,* 131 Tenn. 711, 176 S. W. 1038, 2 A. L. R. 1377; *Park Gasoline Co.* v. *Crusius,* 10 N. J. Misc. 147, 158 Atl. 334; *Cashion Gin Co.* v. *Reisch,* supra; 8 C. J. 527.)

The interest coupons involved here being in effect negotiable promissory notes, and defendant school district being the party primarily liable thereon, plaintiff is not foreclosed from recovery because it failed to present them to the bank before it became bankrupt. The bank was not the agent of plaintiff. It is obvious that if it can be said to have been the agent of anyone in this transaction, it must, under the authorities to which we have already adverted, be held to have been the agent of defendant.

It has been suggested that by reason of business custom prevailing in such matters, defendant was required to have its money in the New York bank on July 15, 1931, to pay the coupons. There is neither allegation nor proof of such a custom. A particular custom or usage relied on as a basis for recovery or defense must be pleaded. (*Lewis* v. *Aronow,* 77 Mont. 348, 251 Pac. 146.) The burden rests upon one asserting custom or usage to prove it. (*Dingley* v. *McDonald,* 124 Cal. 682, 57 Pac. 574; *Imperial Valley Long Staple Cotton Growers' Assn.* v. *Davidson,* 58 Cal. App. 551, 209 Pac. 58. See, also, *Reid* v. *Linder,* 77 Mont. 406, 251 Pac. 157.)

It has also been urged that the defendant school district should not lose because the holder of the coupons was not diligent in their presentation. This position is not tenable in the circumstances of this case. Here it would seem that defendant may have been wanting in diligence, in that it apparently did not avail itself of every opportunity at its command to pre-

vent loss to itself. The facts of this case indicate that the $1,650 may have been a trust fund in the possession of the New York bank, and that timely and appropriate action might have resulted in reclaiming the fund in whole or in part, so that the full loss to defendant would have been averted.

The judgment is reversed and the cause remanded to the district court of Big Horn county, with direction to enter judgment in accordance with the prayer of plaintiff's complaint.

Associate Justices Matthews and Anderson concur.

Mr. Chief Justice Sands, absent on account of illness, takes no part in the foregoing decision.

Mr. Justice Morris: I dissent. The question involved here is, in my opinion, one of negligence rather than of statutory construction, and the majority opinion rewards the slothful and negligent, and penalizes the diligent. Plaintiff's tardiness might be excused if in the presentation of the coupons it had been late for only a day or two or a week, but when, though due in July, they were not presented until October, a case of such gross neglect is presented which, because of the stretch of time elapsing, takes it out of any case I have been able to find supporting the rule laid down by the majority, unless we concede that negligence of any degree, regardless of the loss the innocent party may incur, is not to be taken into account in interpreting the provisions of section 8477, Revised Codes 1921. The rule, that one who by his neglect causes another loss shall answer to the other to the extent of such loss, is fundamental and as old as the law itself.

Defendant, by the business custom prevailing in such matters, was required to have its money at the New York bank on July 15, 1931, to meet the payment of plaintiff's coupons. The defendant fulfilled its obligation and had the money there. The suggestion that defendant itself was wanting in diligence I do not think sustained by the record. Furthermore, when it was sued it pleaded such fulfillment of its contract as it

believed afforded it full protection, and to then attempt to go into a foreign jurisdiction and set up a defense such as that suggested would have been an abandonment of the defense pleaded in this action—an acknowledgment of its lack of faith in the defense pleaded, and that before its rights were determined here.

Plaintiff, in spite of the unsettled business conditions which prevailed at that time, neglected to exercise the prudence required of the average man, and made no move to obtain its money for the coupons until on October 6, when it delivered them to the Denver bank for collection, and by the time they reached New York that bank had closed. It is clearly obvious that plaintiff's tardiness was the sole cause of the loss involved, and the judgment of the lower court should be affirmed.

Rehearing denied May 3, 1935.