No. 81-526

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

SUNBIRD AVIATION, INC.,
a Mont. corp.,

Plaintiff and Third Party Defendant-
Respondent,

-vs-

ROD ANDERSON, also known as
RODNEY ANDERSON,

Defendant and Third Party Plaintiff-
Appellant.

\*\*\*\*\*\*

ROD ANDERSON, a/k/a RODNEY ANDERSON,

Plaintiff-Appellant,

-vs-

SUNBIRD AVIATION, INC.,

Defendant-Respondent.

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin, The Honorable
W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Ralph L. Herriott, Billings, Montana

For Respondent:

Morrow, Sedivy, Olson & Eck, Bozeman, Montana

Submitted on Briefs: June 10, 1982

Decided: September 28, 1982

Filed SEP 28 1982

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appeal by defendant Rod Anderson from a judgment against him in the District Court, Eighteenth Judicial District, Gallatin County. He was ordered to pay plaintiff Sunbird Aviation, Inc. $1,297.89, plus interest, attorney fees, and $3,892.22 on an accounting arising from the co-ownership of an airplane. We affirm the District Court.

Sunbird Aviation, Inc. is a Montana corporation which provides a general aviation service. Rod Anderson is a real estate agent and an experienced pilot.

On December 7, 1978, the parties and one Stanley Langaker entered into a written agreement for co-ownership of a 1977 Piper Seneca II airplane. The purchase of the plane was financed at the First Security Bank of Billings by a first mortgage of $75,000 principal, with monthly payments of $1,486.43.

Under the co-ownership agreement one-half of the aircraft was owned by Sunbird and one-half by Rod Anderson and Stanley Langaker. Insurance premiums, taxes and routine maintenance were to be paid 70 percent by the corporate owner and 30 percent by the individual owners. The expense of engine overhauls and major component expenses were to be paid 50 percent by the corporate owner, and 50 percent by the individual owners. All parties to the agreement had the right to use the Seneca at a cost for each hour of usage of $45. Sunbird kept the accounts for the co-ownership, and would collect the amounts due from the individual owners as the expenses or debts were incurred.

On February 4, 1980, Anderson was delinquent in his payments to the co-ownership in the sum of $1,297.89. He executed a promissory note to Sunbird for that amount

providing for semi-annual interest at 16 percent and reasonable attorney fees.

On May 16, 1980, Langaker owed the co-ownership a balance of $17,000 on his account in settlement of which he transferred his interest in the plane to Sunbird. After that date, Sunbird owned 75 percent and Anderson 25 percent of the aircraft.

When it was determined that the Seneca would not meet FFA standards unless engine repair was carried out, on July 29, 1980, Sunbird purchased and had installed two rebuilt engines at a cost of $23,166.41.

In early 1980, the parties decided to sell the plane at a price sufficient to satisfy the balance owing on the first mortgage. At a time when the parties believed the plane would be sold to Dutton Aviation, Anderson executed a blank bill of sale and delivered it to Sunbird to be used in the sale to Dutton. However, the sale to Dutton did not occur. Anderson's blank bill of sale remained with the officers of Sunbird who used it in the sale of the plane on October 30, 1980 to one Tucker of Bremerton, Washington. Tucker's consideration for the Seneca consisted of $65,000 in cash to Sunbird, and the transfer of title to another airplane, which was later sold by Sunbird for $19,000. These monies were credited to the Anderson and Sunbird accounts after the security interest at First Security Bank of Billings was satisfied.

During the entire period of co-ownership, Sunbird maintained and provided Anderson an accounting of all transactions. The record shows and the District Court found that Sunbird flew the Seneca 515 hours, and that Anderson and Langaker flew it 150.1 hours. Maintenance hours totaled

15.1 hours. During this period, expenses for maintenance, insurance, mortgage payments and taxes totaled $51,298.65. The accounts of Anderson and Langaker were debited $15,237.27. In addition, Anderson's account was debited $5,791.60 for the rebuilt engines. As of October 30, 1980, Anderson owed Sunbird $11,336.49. Of the $84,000 realized in the sale of the Seneca, $59,414.47 was paid to satisfy the first mortgage. Of the remaining $24,585.53, $18,439.15 was credited to Sunbird and $6,146.38 to Anderson. This credit left a balance of $5,190.11 owing by Anderson to Sunbird, less the unpaid principal balance on the promissory note of $1,297.89. Therefore Anderson owed a further $3,892.22 under the co-ownership agreement.

On April 7, 1980, Sunbird instituted an action against Anderson on the promissory note demanding full payment plus interest and attorneys fees. Anderson filed an answer generally denying Sunbird's complaint and included a third-party complaint against Langaker and Sunbird seeking partition of the aircraft, or a sale of the aircraft and a division of the proceeds.

On December 12, 1980, Sunbird filed an answer and complaint demanding an additional $4,490.11 owing from Anderson with interest and costs. On February 4, 1981, Anderson filed a complaint against Sunbird, in a separate action, for damages alleged to have resulted from the sale of the plane. On May 4, 1981, the cases were consolidated. The consolidated cases were tried to the District Court on July 29, 1981, and thereafter the District Court concluded that Anderson owed Sunbird $3,892.22 under the co-ownership agreement, and $1,297.89 plus interest on the promissory note. After a hearing on the issue of attorneys fees, the

-4-

District Court granted Sunbird $2,325 for the prosecution of the collection action on the note.

On September 24, 1981, the District Court entered judgment against Anderson and in favor of Sunbird for $3,892.22 on the account, $1,297.89 on the note, plus 16 percent interest thereon, attorneys fees of $2,325, and costs of $45.74, together with interest on the judgment from the date of the judgment at 10 percent per annum.

Anderson filed his notice of appeal on October 21, 1981.

The issues presented by Anderson are:

1. Whether the District Court erred in finding Anderson owed Sunbird $1,297.89 on the promissory note, and $3,892.22 on the account.

(a) Did the District Court's consideration of the co-ownership as a joint venture in any way prejudice appellant Anderson?

(b) Did Sunbird's written letter to Anderson that he had no interest in the plane received in trade constitute a release from further obligation?

(c) Did the release of Longaker release Anderson from further obligation to Sunbird?

There is little doubt that Anderson owed Sunbird on the promissory note. He delivered a promissory note to Sunbird in recognition of his account balance. The note provided for attorneys fees and interest at 16 percent. This Court follows the rule that a party primarily liable on a negotiable promissory instrument is indebted in that amount to the payee. John K. Etc. Benev. Corp. v. School District No. 17-H (1935), 99 Mont. 388, 43 P.2d 902. Therefore, Sunbird is entitled to collection of the debt owed by Anderson on the

-5-

promissory note and the incidental benefits provided therein
of interest and attorneys fees.

We look to the other issues raised by Anderson to
determine whether the judgment for the amount of the account,
$3,892.22 is proper.

First Anderson claims that the District Court's con-
sideration of the co-ownership agreement as a joint venture
prejudiced him.

Sunbird answers that there were no specific findings by
the District Court on the issue of joint venture. The court
mentioned joint venture in its memorandum but Sunbird contends
that this does not affect the outcome of the case. Sunbird
notes in its brief that Anderson does not explain the claimed
prejudice from the mention of joint venture by the District
Court.

A joint venture is "[A]n enterprise undertaken by
several persons jointly, and more particularly, as an association
of two or more persons to carry on a single business enterprise
for profit. It has also been defined, somewhat variantly,
as a special combination of persons undertaking jointly some
specific adventure for profit,. . ." Rae v. Cameron (1941),
112 Mont. 159, 167, 114 P.2d 1060, 1064. In the sense of
that definition, the arrangement between the parties here
was not a joint venture. It was simply an agreement for the
co-ownership of an aircraft with provisions in the agreement
for the costs of usage, repair and maintenance to be divided
among the parties. The District Court's reference to a
"joint venture" in the memorandum does not affect its inter-
pretation, which we find to be proper, of the responsibilities
of the parties under the co-ownership agreement.

Anderson further contends as an issue that a letter
from Sunbird to Anderson dated November 3, 1980, constituted

-6-

an independent release of Anderson from further obligations to Sunbird. He contends the District Court made no specific findings of fact relating to the letter of November 3, 1980, and that we should review and determine whether in fact the letter constituted an independent release of Anderson.

The letter of November 3, 1980, states in part: "In view of these facts Sunbird feels you have absolutely no claim to ownership of the C-206." Anderson is contending on appeal that this has the legal effect of terminating the co-ownership or that the language has the effect of releasing him from obligations under the co-ownership agreement.

Sunbird answers that the issue of Anderson's release under the letter of November 3, 1980, concerning the aircraft was not raised in the lower court.

An issue not raised in the District Court will not be considered by us on appeal. Chadwick v. Giberson, et al. (1980), _____ Mont. ___, 618 P.2d 1213, 37 St.Rep. 1723; Stout v. Reiter (1979), _____ Mont. ___, 595 P.2d 1167, 36 St.Rep. 992; Kearns v. McIntyre Construction Co. (1977), 173 Mont. 239, 567 P.2d 433, 440; O'Hanlon v. Ruby Gulch Mining Co. (1922), 64 Mont. 318, 326, 209 P. 1062, 1064.

Anderson further contends that the sale of the Seneca by Sunbird, and the release of Langaker each had the effect of releasing Anderson from any further obligation to Sunbird.

There is no evidence in the record to support Anderson's contention that the sale of the Seneca, standing alone, constituted a release of obligations owing by Anderson to Sunbird. The parties had agreed to sell the plane and Anderson had delivered a blank bill of sale to be used in the sale of the plane. There is nothing in the record to support Anderson's contention that the sale of the plane was to terminate all of his obligations to Sunbird arising out

-7-

of the co-ownership agreement.

We do not find anything in the release of Langaker by Sunbird and the transfer of his interest in the plane to Sunbird sufficient to constitute a release of the obligations owing by Anderson.

The common law rule is that a release of one joint obligor on a contract releases all other obligors. See Colliers v. Field (1872), 1 Mont. 612, 2 Mont. 205, 2 Mont. 320. "The modern view is where two or more obligors are jointly liable for a breach of a contract, a release to one does not necessarily release the other, and that the question whether the other is released depends upon (1) the intention of the parties to the release instrument, and (2) whether the injured party has in fact received full compensation (satisfaction). . ." 66 Am.Jur.2d Release § 35.

With regard to release of joint tortfeasors, this Court has stated that:

> "Unless the release specifically states otherwise, a finder of fact may consider the intent of the parties in making a release." Kussler v. Burlington Northern, Inc. (1980), ____ Mont. ____, 606 P.2d 520, 524, 37 St.Rep. 240, 245.

Here Anderson contends that the findings of fact by the District Court do not expressly state whether Langaker was indeed released, and if he was, whether his release constituted a release of Anderson.

Nothing in the evidence indicates an intent on the part of Sunbird to release Anderson when it acquired the interest of Langaker to the airplane. From the record, it appears that Sunbird simply acquired Langaker's interest in the aircraft in exchange for assuming Langaker's obligation to the co-ownership arrangement. We find nothing in the termination

of Langaker's interest in the airplane by his transfer to Sunbird that would constitute a release, express or implicit, of Anderson from his obligations for expenses under the co-ownership agreement.

Since we find no error in the findings of fact and conclusions of law on which the judgment of the District Court is founded, we affirm the District Court.

_____
                Justice

We Concur:

_____
        Chief Justice

_____

_____
                Justices

Mr. Chief Justice Frank I. Haswell, special concurring:

I concur with the majority opinion in the treatment of the issues raised and our rulings thereon.

However, there is a question in my mind concerning the amount of attorney fees awarded in this case. It appears that the District Court's award covered services performed by the attorney in addition to collection of the note. Since this issue was not raised in the District Court, I would not consider it for the first time on appeal under the authorities cited in the majority opinion.

_Frank I. Haswell_
Chief Justice
