779 P.2d 99

**Fernando GALLEGOS, et al.,
Plaintiffs–Appellees,**

v.

**CITIZENS INSURANCE AGENCY, et
al., Defendants–Appellants.**

No. 17624.

Supreme Court of New Mexico.

Aug. 21, 1989.

724

Bryan L. Hunt, Donaldo Martinez, Las Vegas, for defendants-appellants.

Montgomery & Andrews, Stephen S. Hamilton, Santa Fe, for plaintiffs-appellees.

## OPINION

RANSOM, Justice.

This matter coming on for consideration by the Court upon motion for reconsideration, and the Court having considered said motion and being sufficiently advised;

NOW, THEREFORE, IT IS ORDERED that the opinion handed down by the Court on June 27, 1989, is hereby withdrawn and the opinion filed this date substituted therefor.

Fernando and Frances Gallegos sued the following defendants as partners in the Citizens Insurance Agency (Citizens): Emilio Aragon (Aragon) and his wife, Imelda; Amadeo Tenorio, Jr. (Tenorio), and his wife, Mary; Max Sanchez; and Robert Gonzales. The complaint alleged that the defendants wrongfully failed to provide the plaintiffs a policy of automobile insurance, and were liable for the cost of two minor accidents and for punitive damages. Defendants Aragon and Gonzales denied they were partners at the time of the transaction about which plaintiffs complain. Prior to trial, the plaintiffs settled with Tenorio and his wife.

Upon the close of testimony in the ensuing jury trial, the plaintiffs amended their complaint to conform to the evidence, and the jury was instructed on theories of express, implied and quasi-contract, and on tort theories of a negligent or fraudulent misrepresentation that insurance had been provided. The evidence determinative of this appeal may be summarized as follows.

Sanchez and Tenorio were equal partners in Citizens. Sometime prior to May 12, 1984, Gonzales began soliciting insurance business on behalf of Citizens. Gonzales also was discussing with Tenorio the possi-

bility of purchasing the latter's interest in the partnership. On or about May 12, Gonzales procured from Mrs. Gallegos an application and a $600 quarterly premium check for Citizens to provide automobile insurance for eight vehicles. Gonzales testified that he received a price quotation over the telephone from Sanchez. Mrs. Gallegos confirmed that Gonzales received the price information by telephone. Gonzales delivered the application and the check to Citizens. Citizens endorsed and deposited the check on May 14.

On June 15, a purchase agreement was executed for the purchase of Tenorio's interest in Citizens by Gonzales and Aragon. Gonzales received keys to Citizens and was listed on the signature cards for two of Citizens' bank accounts. Gonzales, however, failed to timely pay his portion of the purchase price and Aragon acquired the entirety of Tenorio's partnership interest. By early July, neither Gonzales nor Tenorio any longer had an interest in Citizens.

On or about June 11 and 12, Gonzales asked Della Valerio, Citizens' secretary, to issue receipts for the insurance premium for each of the plaintiffs' vehicles. Valerio issued eight receipts. Contemporaneously with the issuance of the receipts, Mrs. Gallegos inquired as to the whereabouts of her insurance policy and proofs of financial responsibility. *See* NMSA 1978, §§ 66–5–201 to 66–5–239 (Repl.Pamp. 1984 & Cum. Supp.1988). Valerio testified further that around this same time she informed both Sanchez and Aragon that plaintiffs had not received a policy. Despite requests by Gonzales that Citizens issue the plaintiffs a policy, it did not provide one to them. During that summer, Mrs. Gallegos made several requests to Citizens for her policy but was told to speak to Gonzales. Gonzales, in turn, would assure her that the policy and proofs were coming.

On July 8, one of the vehicles that was supposed to be insured was involved in a minor accident. Under the instructions of Gonzales, the plaintiffs submitted two repair estimates to Citizens. Citizens never made payment on this claim. On October 2, another of the plaintiffs' automobiles

was involved in a minor accident. Mrs. Gallegos telephoned Citizens and was instructed by Valerio to submit two repair estimates to Citizens. Finally, a few weeks after the October 2 accident, Aragon and Sanchez met with Mr. Gallegos. They informed him that Citizens had not procured an insurance policy for the Gallegoses, that they were uninsured, and that the damages resulting from the two accidents would not be reimbursed. Although Citizens did offer to reimburse the plaintiffs' premium, the $600 was never refunded.

■ *Instructions.* Initially, we are compelled to comment on the instructions. The case was submitted to the jury on fifty-four separately numbered instructions without an integrated and comprehensive statement of the issues. The introduction to Chapter 3 of the Uniform Jury Instructions—Civil, SCRA 1986, 13–101 to 13–2221, states:

> The key to good instruction is the formulation of the issues of the lawsuit.
>
> \* \* \* \* \* \*
>
> It is essential that the trial lawyers and the trial judge realize their duty to thoughtfully draft and clearly present the statement of the issues to the jury \* \* \*. A simple, commonsense, logical presentation of the key issues is the objective.

Under this rubric, it would have been appropriate, *for example*, to instruct the jury on the issues as follows:

> The plaintiffs seek compensation under claims of Breach of an Automobile Insurance Contract and of Unfair Acceptance and Retention of an Insurance Premium [i.e., quasi-contract or unjust enrichment], and under claims of Negligent or Fraudulent Misrepresentation. Plaintiffs have the burden of proving the amount of any damages to which they may be entitled.
>
> A. To establish the claim of Breach of Contract, plaintiffs have the burden of proving (1) that plaintiffs had supplied all fleet information required by Citizens before it would enter into an insurance contract, and (2) at least one of the following contentions:

a. Actual Agent: In dealing with the plaintiffs for the automobile insurance policy, Gonzales was the agent of Citizens; or

b. Apparent Agent: Citizens, by its statements, acts or conduct, led plaintiffs reasonably to believe Gonzales was its agent, and plaintiffs dealt with Gonzales in reliance upon the representations of Citizens.

The defendants Aragon and Sanchez deny that all required fleet information was supplied and they also deny that Gonzales was either an actual or an apparent agent of Citizens.

B. To establish the claim of Unfair Acceptance and Retention of an Insurance Premium, plaintiffs have the burden of proving that Citizens accepted and retained the premium under circumstances in which it would not be fair to keep the premium without paying the insurance claim. The defendants deny they acted unfairly under the circumstances.

C. To establish the claim of Misrepresentation on the part of a defendant, the plaintiffs have the burden of proving at least one of the following contentions applicable to that defendant:

1. The defendant made a negligent and material misrepresentation that automobile insurance had been provided; or

2. The defendant made a fraudulent misrepresentation that automobile insurance had been provided; and

plaintiffs also contend and have the burden of proving they relied on such misrepresentation to their damage. The defendants deny these contentions.

D. Related to the claims, plaintiffs contend and have the burden of proving that misconduct of a defendant was an act for which punitive damages should be awarded against that defendant. Defendants deny this contention. Also, defendants Aragon deny they were partners in Citizens at the time of the Gallegos transaction, and defendant Gonzales claims he was an agent, but not a partner. Only defendant Sanchez admits he was a partner; and plaintiffs, therefore, have the burden of proving which of the remaining defendants, if any, were partners in Citizens at the time of the Gallegos transaction.

After considering the evidence and these instructions as a whole, the preliminary question presented for you to answer under Breach of Contract, Part A of the special verdict form, is whether Gonzales was acting for Citizens in dealing with plaintiffs. If you answer, "No," you shall go to Part B of the special verdict form. If, on the other hand, you answer "Yes," that Gonzales was a partner or otherwise acted as an agent of Citizens, you will continue under Part A to decide whether plaintiffs supplied all fleet information required by Citizens before it would enter into the insurance contract, and, if so, you will determine the amount of money that will compensate plaintiffs for damages resulting from Citizens' failure to provide a policy of automobile insurance.

Under Unfair Acceptance and Retention of an Insurance Premium, Part B of the special verdict form, you will answer whether Citizens accepted and retained the premium under circumstances in which it would not be fair to keep the premium without paying the insurance claim. If you answer "No," you will go to Part C of the special verdict form. If, on the other hand, you answer "Yes," and, if you have not already determined damages under Part A, you will continue under Part B to determine the amount of damages to be awarded plaintiffs.

Under Misrepresentation, Part C of the special verdict form, you will answer whether a defendant made to plaintiffs either a negligent or fraudulent misrepresentation that automobile insurance had been provided, and whether plaintiffs relied on any such misrepresentation to their damage. If you answer "No," you will go to Part D of the special verdict form. If, on the other hand, you answer "Yes," you will answer the additional questions requested of you under Part C. [E.g., by whom the misrepresentation was made, whether negligent

or fraudulent, and damages if not yet determined.]

Under Punitive Damages, Part D of the special verdict form, you will answer whether, under any of the three preceding Parts, you have found for plaintiffs and against any defendant for acts that were either willful, wanton, reckless, or grossly negligent. If you answer "No," your foreman will then sign the special verdict form and you will proceed to the Special Interrogatories. If, on the other hand, you answer "Yes," you will find the separate amount of punitive damages to be awarded against any defendant. [See SCRA 1986, 13–302 (Example A, Special Verdict (5–10)).] Your foreman will then sign the special verdict form and you will proceed to the Special Interrogatories.

Finally, if you found damages under any of the first three Parts of the special verdict form, you will answer the Special Interrogatories concerning the partner status of defendants Aragon and defendant Gonzales at the time of the Gallegos transaction.

Having formulated the issues as proposed above, it would thereafter be necessary to give only those duty and definitional instructions left unanswered in the statement of issues, e.g., actual agent, partner, acts and knowledge of a partner or employee as acts or knowledge of the partnership, negligent and fraudulent misrepresentation, and compensatory and punitive damages. Duty and definitional instructions readily incorporated in the statement of issues, e.g., apparent agency and quasi-contract, need not be repeated. Aside from other mandatory instructions, e.g., admonitions and burden of proof, the court should act with circumspection in the choice of additional instructions. Because there was no dispute over whether the damages claimed ($3,033.38) would have been within the contemplation of the parties of the alleged contract or would have been proximately caused by the alleged misrepresentation, it would not be necessary to include those causation issues in the contentions required to be proved by plaintiffs.

■ We note that Gonzales had a cross-claim against the other defendants for indemnity in the event he were found liable. This claim was included in the court's statement of issues, but not in terms of the passive *versus* active issues giving rise to indemnity between partners or others under circumstances of joint and several vicarious liability. *See Vallejos v. C.E. Glass Co.*, 583 F.2d 507 (10th Cir.1978). The court gave no duty or definitional instructions following the statement of the cross-claims. These claims, if stating fact issues not otherwise presented to the jury, appropriately could have been incorporated in the instructions as are counterclaims. *See* SCRA 1986, 13–302D.

■ Although done without objection, we also note that the court instructed that the standard of proof for assessing punitive damages is one of substantial evidence, defined as evidence such as a reasonable mind might accept as adequate to support a conclusion. This language was apparently taken by error from a publisher's headnote in *United Nuclear Corp. v. Allendale Mutual Insurance Co.*, 103 N.M. 480, 709 P.2d 649 (1985). The language in question refers to the standard on review, whereas the opinion holds that issues of punitive damages are to be determined according to the preponderance of the evidence. *Id.* at 485, 709 P.2d at 654; *see* SCRA 1986, 13–304.

■ A separate verdict form was provided with respect to compensatory and punitive damages to be awarded against each defendant. The jury found in favor of Imelda Aragon and Robert Gonzales. The jury found for the plaintiffs and against Sanchez in the sum of $2,000 for compensatory damages and $8,000 for punitive damages, and found for the plaintiffs against Aragon separately for the same amounts of compensatory and punitive damages. The total compensatory damages claimed and proved amounted to $3,033.38. The court entered judgment severally against Sanchez and Aragon in the sums of $1,516.69 for one-half of the compensatory damages, and in sums of $8,000 for punitive damages. The liability of the partners should have been joint and several for the

compensatory damages awarded. *See* NMSA 1978, 54–1–15 (Repl.Pamp.1988); SCRA 1986, 13–411 (Committee Comment).[1] Under Part C of the special verdict form, proportionate fault may have been decided for tort liability, but, as between partners that finding would affect only equitable contribution [2] and not joint and several liability. With respect to punitive damages, when they are awarded against two or more defendants they must be separately determined as to each. *See Vickrey v. Dunivan*, 59 N.M. 90, 279 P.2d 853 (1955). The confusing verdicts could have been avoided if the court had submitted special verdict forms as proposed above (and represented in SCRA 1986, 13–302F (Example A, Special Verdict), except that findings with respect to comparative negligence are inapplicable for breach of contract and the vicarious liability of partners). In a motion for clarification of the verdict, and for remittitur, defendants Sanchez and Aragon questioned whether the jury meant to assess each defendant individually or whether the $2,000 compensatory and the $8,000 punitive assessments were against both. However, no appeal has been taken from the $1,516.69 severally awarded against each defendant and this judgment stands as the law of the case. Likewise, because Sanchez has not appealed, we do not disturb the $8,000 punitive damage judgment entered against him.

*Issues raised.* Only Aragon appeals. He raises the following points: (1) whether Tenorio was a necessary and indispensable party, (2) whether Gonzales was a partner or otherwise an agent of Citizens, (3) whether a contract existed between the plaintiffs and Citizens, (4) whether a verdict in favor of Gonzales and settlement with the Tenorios extinguished the liability of Aragon, (5) whether there was substantial evidence to support a finding of punitive damages or whether there was error in submitting instructions on this issue, (6) whether the admission of plaintiffs' Exhibit 14 was prejudicial error, and (7) whether the trial court erred in denying Sanchez and Aragon each five peremptory challenges. We affirm in part and reverse in part.

■ *Party not necessary and indispensable.* Aragon argues first that the trial court was without proper jurisdiction because Tenorio, though a necessary and indispensable party, was dismissed from the lawsuit when he settled with plaintiffs prior to trial. *See* SCRA 1986, 1–019 (Rule 19); *Holguin v. Elephant Butte Irrigation Dist.*, 91 N.M. 398, 575 P.2d 88 (1977). According to Aragon, Tenorio was an indispensable party because he was the link between Gonzales and Citizens and his testimony was necessary to shed light on Gonzales' relationship with Citizens. We believe Aragon erroneously has equated an instrumental *witness* with an indispensable *party*.

■ Rule 19 provides that:
[a] person * * * shall be joined as a party in the action if: (1) in his absence complete relief cannot be accorded among those already parties; or (2) he claims an interest relating to the * * * action and * * * [its] disposition * * * in his absence may: (a) * * * impair or impede his ability to protect that interest; or (b) leave * * * persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

If the absent party is indeed indispensable, the action must be dismissed, *Holguin*, 91 N.M. at 401, 575 P.2d at 91, but none of the criteria for indispensability has been shown to be present here. Specifically, NMSA 1978, Sections 38–4–3 and 38–4–5 (Repl. Pamp.1987) address suits brought against joint obligors and partners, respectively. By the plain language of these statutes, it is permissible in all cases of joint obligations by partners to bring and to prosecute suit against any one or more of the

---

1. Actually, the jury was so instructed. See SCRA 1986, 13–1824, given as Instruction 42, and SCRA 1986, 13–1825, given as Instruction 44.

2. Equitable contribution between joint tortfeasors is now statutorily adopted. *See* NMSA 1978, §§ 41–3–2(D), 41–3A–1(C)(3) (Cum.Supp. 1988).

individual partners, and "when more than one person is joined as defendant in any such suit, such suit may be prosecuted, and judgment rendered against one or more of such defendants." § 38–4–3. The plaintiff is in general under no obligation to sue more than one of multiple persons claimed to be jointly and severally liable on a contract, Section 38–4–2, or claimed to be proportionately liable in tort. *Cf. Tipton v. Texaco, Inc.*, 103 N.M. 689, 712 P.2d 1351 (1985) (allowance of third-party practice under Rule 14 to join parties claimed by defendant(s) to be proportionately at fault). The contention that Tenorio was an indispensable party is without merit.

▇▇▇ *Agency established.* Aragon next maintains that the plaintiffs failed to establish that Gonzales was a partner or otherwise an agent for Citizens at the time he negotiated the contract with plaintiffs. Aragon asserts that Gonzales was an independent broker and the agent of the plaintiffs. He argues that all liability for the alleged breach of contract and negligent misrepresentations rests with Gonzales. He points to the plaintiffs' testimony that they relied upon Gonzales because he was a family friend and that they only negotiated with Gonzales, and spoke to no one else at Citizens. Aragon argues further that Citizens did not exercise any control over Gonzales or direct or supervise any of his actions. Nor did Citizens ever compensate Gonzales for his activities on its behalf.

The question of agency is normally one of fact and is to be determined from all attendant circumstances, in conjunction with the conduct and the communications of the parties. *Fryar v. Employers Ins. of Wausau*, 94 N.M. 77, 607 P.2d 615 (1980). On appeal, we will not disturb a finding of agency if such finding is supported by substantial evidence. *Id.* We conclude that there was substantial evidence to support a jury verdict for the plaintiffs premised upon a finding that Gonzales acted on behalf of Citizens as either its actual agent, *see Western Elec. Co. v. New Mexico Bureau of Revenue*, 90 N.M. 164, 167, 561 P.2d 26, 29 (Ct.App.1976) (agent is one authorized by another to act on his behalf and under his control), or under its apparent

authority, *see Tabet v. Campbell*, 101 N.M. 334, 337, 681 P.2d 1111, 1114 (1984) (apparent authority is authority principal holds his agent out as possessing or allows agent to exercise or to represent himself as possessing as to estop principal from denying its existence).

Sanchez admitted that Gonzales had access to Citizens' office building and insurance rate books, and, more importantly, that he was involved with Citizens in a "soliciting capacity." Gonzales testified he was an agent of Citizens and that Sanchez relayed to him the price information that Gonzales subsequently quoted to Mrs. Gallegos. *See Ronald A. Coco, Inc. v. St. Paul's Methodist Church, Inc.*, 78 N.M. 97, 99, 428 P.2d 636, 638 (1967) (fact of agency may be established at trial by agent himself). Moreover, it was immaterial whether Gonzales was compensated by Citizens, *see* SCRA 1986, 13–401, or that Citizens claimed that it did not exercise actual control over Gonzales, *see* SCRA 1986, 13–402. Once a principal and agent relationship is established, the principal becomes liable for the acts of his agent when the agent acts "within the scope of his agency; and ... [t]he principal had the right to control the manner in which the details of the work were to be performed at the time of the occurrence, even though the right of control may not have been exercised." *Id.* Citizens allowed Gonzales to solicit insurance business and it had the power to control his actions. *See Berry v. Pennsylvania Fire Ins. Co.*, 33 N.M. 661, 274 P. 169 (1928).

▇▇▇ *Contract existed.* Aragon next claims that missing information from the application, essential to the agreement, negated any alleged contract that existed between Citizens and the plaintiffs. The missing information pertained to the plaintiffs' daughters whose automobiles were among the eight vehicles scheduled for coverage. Aragon contends that the information was necessary to determine the amount of the premium and whether to accept the application for insurance coverage.

Without reaching the issue of whether the missing information was essential to create a binding agreement, *see Trujillo v. Glen Falls Ins. Co.*, 88 N.M. 279, 540 P.2d 209 (1975), we can dispose of this argument based on the testimony presented at trial. Mrs. Gallegos testified that she filled out an insurance application that contained specific information regarding each vehicle to be covered and she submitted it to Gonzales along with the quarterly premium. She further testified that prior to receiving the receipts for her premium she had called Citizens and supplied the omitted data concerning her daughters. There was substantial evidence that a contract existed.

■ *Liability not extinguished by agent's exoneration.* Aragon also asserts that his liability was extinguished by virtue of the jury verdict in favor of Gonzales and the plaintiffs' settlement with the Tenorios. Relying upon the theory that exoneration of the servant operates in tort to exonerate the principal of vicarious liability, *see Harrison v. Lucero*, 86 N.M. 581, 525 P.2d 941 (Ct.App.1974), Aragon argues that the verdict in favor of Gonzales was inconsistent with the verdict against him. *See also Kinetics, Inc. v. El Paso Prods. Co.*, 99 N.M. 22, 653 P.2d 522 (Ct.App.1982).

■ The court in *Harrison*, however, premised its holding on the fact that the master's liability was purely vicarious. Similarly, in *Kinetics*, the liability of the defendant partner El Paso Products was vicarious only, as it had no direct dealings with the plaintiff. Here, however, the plaintiff alleged and adduced evidence that Aragon was directly responsible for the failure to provide them the automobile insurance that they purchased. Furthermore, under breach of contract, it was not inconsistent to place liability upon the principal and to exonerate the agent. *See Barnes v. Sadler Assocs., Inc.*, 95 N.M. 334, 622 P.2d 239 (1981). An agent is not liable for the disclosed principal's breach of contract unless he expressly was made a party to the contract or unless his conduct indicated an intent to be bound. *Id.; Otero v. Wheeler*, 102 N.M. 770, 701 P.2d 369 (1985).

■ *Liability not extinguished by settlement.* The settlement with Tenorio for any alleged tortious conduct on his part would have had no effect upon the tort liability of Aragon as a consequence of the latter's own actions. The tort liability of Tenorio was either joint and several, or several, depending upon whether he was or was not a partner. Properly raised, that partnership fact issue could have been included in the Special Interrogatories. If Tenorio's liability was joint and several, a release would not discharge other tortfeasors unless the release so provided. NMSA 1978, § 41-3-4 (Repl.Pamp.1986). The issue of release was not raised and preserved below. The motion to dismiss the action because of the dismissal of Tenorio as a party was premised on grounds that Tenorio was an indispensable party, not on grounds that the settlement operated to discharge all joint obligors. Regarding joint contract liability, we likewise do not reach or decide here whether we would follow the common law that a release of one joint obligor on a contract operates to release all other obligors or whether we would adopt the modern view that where two or more obligors are jointly liable for breach, a release of one does not necessarily release the other; whether the other is released depends upon the intent of the parties and whether the injured party has received full satisfaction. *See Sunbird Aviation, Inc. v. Anderson*, 200 Mont. 438, 445, 651 P.2d 622, 626 (1982).

■ *Punitive damages.* As his fifth point of error, Aragon submits that the trial court erred in submitting instructions on punitive damages to the jury. Aragon argues that the assessment of punitive damages for a breach of an insurance policy must be premised on evidence of bad faith or malice in the insurer's refusal to pay the claim. *See United Nuclear Corp.*, 103 N.M. at 485, 709 P.2d at 654. Bad faith means any frivolous or unfounded refusal to pay. *Id.* As with the insurer in *United Nuclear Corp.*, Aragon argues that Citizens had legitimate reasons to contest the claim. He relies upon his position that Gonzales acted independently of Citizens.

According to Gonzales' testimony, Sanchez was aware from the time that the contract was negotiated that plaintiffs had applied for insurance with Citizens. Valerio testified further that Aragon and Sanchez were on notice in June that the plaintiffs had paid for insurance coverage but had received no policy. Mrs. Gallegos testified that she had made repeated requests to have Citizens send her a policy and proofs of financial responsibility, but to no avail.

After the plaintiffs' first accident in July, repair estimates were submitted to Citizens but it did not pay the claim. Finally, after another accident in October, Citizens acknowledged the existence of a problem regarding plaintiffs' insurance coverage. Citizens disavowed any responsibility to cover the damages of either accident, and only offered to reimburse the premium. Citizens, however, never did reimburse the plaintiffs' premium. With this testimony, we believe there was sufficient evidence to warrant the jury instruction given on punitive damages under SCRA 1986, 13–1827.

*Hearsay exhibit.* Regarding the admissibility of plaintiffs' Exhibit 14, plaintiffs only gave a cursory response to this point in their answer brief, relying on case law that holds issues not raised in the docketing statement will not be reviewed on appeal. *See State v. Hernandez,* 95 N.M. 125, 619 P.2d 570 (Ct.App.1980); *see also* SCRA 1986, 12–213(A)(3) ("A party shall be restricted to arguing only issues contained in the docketing statement".) The court of appeals requires a docketing statement to implement its calendaring system.

■ Unlike the court of appeals, this Court has not introduced a calendaring system under which the docketing statement has any import of substance, except to facilitate the designation of a partial stenographic transcript of proceedings pursuant to SCRA 1986, 12–211(C)(1). While the docketing statement required under SCRA 1986, 12–208 remains mandatory for perfecting appeals to this Court, it is not jurisdictional. It is within our discretion to consider error preserved below and presented in appellant's brief after having

been omitted from the docketing statement. Obviously, prejudice to the appellee arising out of an incomplete transcript would affect our decision. To the extent our previous decisions have held that issues first raised in the brief in chief automatically warrant no review, they are overruled. *See State v. Taylor,* 107 N.M. 66, 752 P.2d 781 (1988); *State v. Smith,* 104 N.M. 329, 721 P.2d 397 (1986); *State v. Hoxsie,* 101 N.M. 7, 677 P.2d 620 (1984). An answer brief should point out an appellant's failure to comply with the rule, but still respond to all points raised.

On motion for reconsideration, the plaintiffs request us to consider their arguments that the admission of Exhibit 14 was not error, or, if error, that it was harmless. Because, based upon our previous decisions, plaintiffs were reasonable in their belief that the defendant's failure to raise this issue in the docketing statement precluded its review, we now address the arguments raised in their brief in support of their motion for reconsideration.

■ Exhibit 14 was a letter from an investigator for the state's department of insurance that was addressed to Citizens and Sanchez. The department also sent a copy to the plaintiffs. The letter was in response to the plaintiffs' complaint concerning Citizens' refusal to cover the damages suffered by them due to the accidents. Based upon that information, the investigator found Citizens negligent and in total violation of NMSA 1978, Section 59–11–13 (a compilation of unfair claims settlement practices now codified at NMSA 1978, § 59A–16–20 (Repl.Pamp.1988)). If Citizens did not agree with the department's position, the investigator requested Citizens to notify the department in order to schedule the matter for a formal hearing.

At trial, the plaintiffs' attorney initially moved for the letter's admission during the direct examination of Mr. Gallegos. Counsel for Sanchez and Aragon objected on the grounds of hearsay. Counsel for plaintiffs responded that, "It goes to the issue of bad faith and fraud of Mr. Sanchez—it's not offered for the truth of the matter stated but for the fact that those things were

stated to Mr. Sanchez by the insurance commission." In their motion for reconsideration, the plaintiffs reiterate the position taken at trial and contend that the letter was not offered for the truth of the matter asserted. We do not agree.

We conclude that the trial court correctly sustained the objection to the letter's admission because it was an extrajudicial statement offered to prove the truth of the matter asserted, namely that Citizens and Sanchez were negligent and in violation of a statute proscribing unfair insurance practices. Under our rules of evidence, SCRA 1986, 11–802, an out-of-court statement offered to prove the truth of the matter asserted is inadmissible hearsay unless the statement is excluded from the definition of hearsay, SCRA 1986, 11–801(D), or falls under one of the enumerated exceptions to the inadmissibility of hearsay, SCRA 1986, 11–803, 11–804.

The hearsay exception under which the letter arguably could have been admitted was SCRA 1986, 11–803(H) (public records and reports). Under Subsection H(3), extrajudicial statements of a public agency setting forth in a civil action factual findings resulting from an investigation made pursuant to lawful authority are admissible to prove the truth of the matter asserted, unless circumstances indicate a lack of trustworthiness. *See State v. Ramirez*, 89 N.M. 635, 556 P.2d 43 (Ct.App.1976). We believe that in this instance the conclusion of negligence was not a trustworthy factual finding inasmuch as it was premised on the ex parte allegations of the plaintiffs, prior to any opportunity of Citizens to respond. *See Tincombe v. Colorado Constr. & Supply Corp.*, 681 P.2d 533 (Colo.Ct. App.1984); J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(8) [03] (1988).

The plaintiffs' attorney again moved for the letter's admission during direct examination of Sanchez, an adverse witness. Sanchez was asked, "And that letter told you in effect to pay the Gallegos' some money. Is that correct?" Sanchez replied:

Sanchez: I don't remember the exact contents of the letter, I don't have a copy with me.

[Plaintiffs' counsel]: Your honor, is Exhibit 14—let me hand you what has been marked as plaintiff's Exhibit 14 and ask you if that refreshes your recollection.— Is that a copy of the letter received from the Commissioner of Insurance?

Sanchez: Yes sir.

[Plaintiffs' counsel]: And that letter tells you to pay some money to Gallegos, does it not?

Sanchez: It says that he alleges that he applied for and paid a premium amount of $600 and let me see here. Oh right, it says down here make arrangements to reimburse his premiums.

[Plaintiffs' counsel]: Read that aloud if you would.

[Defense counsel]: Objection your honor. Getting in hearsay in the backdoor.

The Court: That's allowable if this man denies what's in the letter or can't recall he can use it in cross-examination for impeachment purposes. That's a different rule.

\* \* \* \* \* \*

Sanchez: Let me start all over. In view of your negligence to advise Mr. Gallegos that there was no coverage on his vehicles and your failure to reimburse his premium we feel that the interest of the insured was not properly served by your agency and you have acted in total violation of Section 59–11–13 New Mexico S.A. 1978. We request that you make immediate provisions to satisfy Mr. Gallegos' claim and you make provisions to reimburse these premiums.

Plaintiffs maintain that under SCRA 1986, 11–612 the letter properly was admitted. Plaintiffs rely on the rule's provision that if a witness uses a writing to refresh his memory, an adverse party is entitled to have the writing produced, to inspect it, to cross-examine the witness about it, and to introduce into evidence those portions that relate to the witness' testimony. *See id.* Because plaintiffs and Sanchez were adverse parties, plaintiffs argue that they had a right to introduce the letter and the

trial court did not err in admitting it. Production and inspection are not involved in this case, only questions of cross-examination and introduction of this exhibit into evidence for possible impeachment.

In allowing the letter to be admitted, the trial court erred. At the most, the limited, unobjected-to statement regarding the department's request could have been read into the record if Sanchez had denied that the department had made such a request. The letter having refreshed Sanchez' memory, plaintiffs' attorney should have been only allowed to ask his question regarding whether the insurance department had requested Sanchez to reimburse the plaintiffs' premium. *See State v. Bazan*, 90 N.M. 209, 212, 561 P.2d 482, 485 (Ct.App.) (if recollection not revived, writing may be read into evidence and admitted if it meets test set forth in SCRA 1986, 11–803(E)), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977). Because the reading of the entire contents into the record and admitting the letter into evidence violated the hearsay rule, Sanchez' objection should have been sustained.

 Error having been committed, we must next determine whether it was harmless or prejudicial. Under SCRA 1986, 1–061 (Rule 61), error is not grounds for setting aside a verdict "unless the refusal to take such action appears to the court inconsistent with substantial justice." Any error that does not affect the substantial rights of the parties must be disregarded. *Id.* This rule applies not only to district courts, but also to appellate courts. *El Paso Elec. Co. v. Real Estate Mart., Inc.*, 98 N.M. 570, 651 P.2d 105 (Ct.App.), *cert. denied*, 98 N.M. 590, 651 P.2d 636 (1982).

In their motion for reconsideration, plaintiffs contend that if any error was committed, it was harmless. First, plaintiffs argue that the letter's admission was harmless as to Aragon because the letter was not specifically addressed to him. Since the exhibit was not directed to Aragon and no evidence demonstrated his knowledge of the letter, plaintiffs assert that the exhibit could not have been considered by the jury in assessing punitive damages against him.

Plaintiffs miss the point. The prejudicial effect of the letter is that it reflects a determination by a state agency that Citizens acted negligently and in violation of the law. It is immaterial whether Aragon was personally aware of this assessment. The jury nevertheless could have used this evidence to decide that Aragon's actions, i.e., his failure to procure an insurance policy for plaintiffs after being notified in June that plaintiffs had purchased such a policy, were deserving of punitive damages.

Similarly, we cannot agree with plaintiffs' contention that the only damaging aspect of the letter's admission was that it showed the insurance department told Sanchez to reimburse plaintiffs' premium; an allegation already admitted by Sanchez without objection by defense counsel. As previously discussed, we have concluded that the letter was prejudicial because it represented an official assertion that Citizens was negligent and it was admitted for the purpose of proving that assertion. Finally, plaintiffs argue that subsequent testimony by Sanchez negated any harmful effect caused by the letter's introduction. Admittedly, the defense was able to elicit from Sanchez that he responded to the letter, related his position to the insurance department, and that no further action was taken. After defense counsel's objection to the letter's admission was overruled, his attempt to dampen its effect did not serve to waive his objection nor to render its admission harmless.

 This Court previously has announced that in jury cases if proper objection is made "the admission of hearsay [evidence] is prejudicial, reasonably calculated to cause and may have caused rendition of an improper verdict, and requires reversal." *Sayner v. Sholer*, 77 N.M. 579, 582, 425 P.2d 743, 745 (1967). The holding in *Sayner* must be reconciled with Rule 61. Not all erroneously admitted hearsay will automatically warrant reversal. There still must be a showing that its admission affected the substantial rights of the objecting party.

We must examine the intended purpose for the admission of the evidence. In *Sayner*, the erroneously admitted evidence went to the heart of the contested issue of negligence. Here, the plaintiffs desired admission of the department's letter to corroborate their theory that Citizens acted in bad faith. This, in turn, would support their prayer for punitive damages. Consequently, we believe the prejudicial impact of its admission is limited to the award of punitive damages. As regards the liability for breach of contract, however, we conclude that there was more than ample evidence to support the jury verdict; the letter was cumulative evidence and, on this issue, its admission was harmless error. *See Tincombe*, 681 P.2d at 535. Accordingly, we reverse the jury verdict on punitive damages only.

 *Denial of peremptory challenges.* Aragon's final point concerns the court's alleged error in refusing to allow Sanchez and Aragon five peremptory challenges each. Aragon maintains that his interests were diverse from Sanchez, and under SCRA 1986, 1–038(E) he was entitled to five peremptory challenges. *Carraro v. Wells Fargo Mortgage & Equity*, 106 N.M. 442, 744 P.2d 915, *cert. denied*, 106 N.M. 439, 744 P.2d 912 (1987), outlines those factors a trial court should consider in determining whether to grant additional jury challenges. They are as follows: "(1) whether the parties employed the same attorneys; (2) whether separate answers were filed; (3) whether the parties' interests were antagonistic; and, (4) in a negligence claim, whether different independent acts of negligence are alleged in a suit governed by comparative negligence." 106 N.M. at 445, 744 P.2d at 918. The determination of whether to grant additional jury challenges rests within the sound discretion of the trial court. *Id.* Here, Sanchez and Aragon employed the same counsel and filed the same answer. While their interests in Aragon's partnership status (joint liability) or several tort liability may not have been the same, the court in its discretion well could have found that those antagonisms would not affect significantly the choice of individual jurors, especially when considered in

light of the common interests of the defendants as against the interest of the plaintiffs in the choice of jurors. It is clear that the trial court did not abuse its discretion in allowing a total of five challenges to Aragon and Sanchez.

The jury verdict on liability is affirmed, but the judgment is reversed and remanded on the issue of punitive damages against Aragon.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.