**Bobby E. WILLIAMS**

v.

**HEVI–DUTY ELECTRIC COMPANY.**

No. 2–85–0033.

United States District Court,
M.D. Tennessee,
Northeastern Division.

Sept. 29, 1988.

Bill Bush, Rural Legal Services, Cookeville, Tenn., Richard Brooks, Carthage, Tenn., for plaintiff.

Lin S. Howard, Nashville, Tenn., George D. Cunningham and Lawrence T. Lynch, Foley & Lardner, Milwaukee, Wis., Diane Stamey, Asst. Atty. Gen., Nashville, Tenn., for defendant.

## MEMORANDUM

MORTON, Senior District Judge.

Defendant Hevi–Duty Electric Company moves this court for relief from its order of August 30, 1988. In that order, the court temporarily denied costs to the defendant while indicating the denial would be permanent if and when the plaintiff submitted an affidavit supporting his declaration of poverty. The affidavit has now been submitted. For the reasons discussed below, the court grants the defendant partial relief from the August 30, 1988 order. Furthermore, the temporary status of that August 30 order is now made permanent. Accordingly, costs will be taxed against the plaintiff in the amount of $510.55.

The court is presented with four questions. First, did plaintiff file his original exceptions to defendant's proposed bill of costs in a timely fashion? Second, was it proper for the court to consider plaintiff's ability to afford costs as relevant to whether they should be assessed? Third, even if plaintiff's ability to pay is relevant, should the court examine plaintiff's current financial condition or his condition at the time defendant originally submitted a proposed bill of costs? Fourth, does this court have the authority to determine whether the appeal-related costs should be assessed?

 Defendant filed its proposed bill of costs on June 29, 1987. The proposed bill gave notice that defendant would appear before the Clerk on July 24, 1987. Meanwhile, on July 15, 1987, the plaintiff filed objections to defendant's cost bill.

Defendant maintains that those exceptions were not timely under Local Rule 13(d).

Local Rule 13(d) states in pertinent part as follows:

[A] cost bill shall be filed by the prevailing party with the Clerk within thirty (30) days from the entry of the judgment in the case. A copy of said bill of costs shall be served on opposing counsel. A statement shall appear thereon that the bill of costs will be presented to the Clerk on a day and hour certain, but no sooner than five (5) days from the date of service. If opposing party does not file written objections within the five-day period, the Clerk shall allow all costs claimed.

An extremely rigid construction of the rule would lead to the conclusion that the objections were not timely. However, the purpose of the rule is merely to require exceptions to be filed before the date on which the bill of costs are to be presented to the Clerk. The minimum five-day period is placed in the rule to ensure an adequate time is available for preparing objections before the date of appearance. If the party proposing the bill of costs enlarges the time before which the appearance will be made, he necessarily also expands the allowable time available for filing objections. Nothing requires the objecting party to file exceptions within five days if the appearance before the Clerk is almost a month away. Accordingly, the court holds the exceptions timely.

Whether plaintiff's financial condition was a proper basis for the court's August 30 order temporarily denying costs presents a more difficult question. In its earlier order, the court held that *Haynie v. Ross Gear Division of TRW, Inc.*, 799 F.2d 237 (6th Cir.1986), *vacated as moot*, — U.S. ——, 107 S.Ct. 2475, 96 L.Ed.2d 368, (1987), required examination of the plaintiff's ability to afford costs before an assessment is made. Defendant urges that *Haynie* is inapplicable to the present situation. The court rejects this argument. A detailed analysis of *Haynie* is helpful.

*Haynie* involved an award of costs and attorney fees following an unsuccessful employment discrimination suit brought by Ms. Pearlie Mai Haynie. The cause of action was based on 42 U.S.C. § 1981 and § 2000e, *et seq.* The plaintiff failed to make out a prima facie case against one of the defendants, her union. After a full trial, she also lost her claim against her employer. Subsequently, both the union and the employer moved for an award of attorney fees and costs against Ms. Haynie and her counsel.

The trial court awarded the employer fees and costs against Ms. Haynie, but not against her counsel. However, plaintiff and counsel were held jointly and severally liable for the union's costs and fees.

On appeal, the Sixth Circuit reversed the award of costs and fees to the employer. The court held the award improper since the plaintiff had neither sued in subjective bad faith nor brought an action that could "be considered 'frivolous, unreasonable, or without foundation.'" *Haynie* at 242.

On the other hand, it viewed the claim against the union as "totally baseless." *Haynie* at 243. On that ground, the Sixth Circuit held an award of fees and costs against the plaintiff to be within the trial court's discretion. However, it added a qualification. It remanded the case, requiring the trial court to determine if "Ms. Haynie's financial situation were such as to make it reasonable for the union's expenses to be borne by Ms. Haynie...." *Haynie* at 243. Depending upon her economic situation, it authorized the district court to "relieve [Ms. Haynie] from liability, in whole or in part...." *Haynie* at 243.

Taken at face value, *Haynie's* requirement to examine the losing plaintiff's ability to shoulder costs and attorney fees before an award determination is made must apply to the facts at hand. Admittedly, however, certain other Sixth Circuit decisions cast a fog of uncertainty over the degree to which *Haynie* can be accepted at face value. Nevertheless, since *Haynie* is the most recent pronouncement of the Sixth Circuit on this issue, and since the *Haynie* facts are so similar to the case at bar, this court will follow its instructions.

On its face, *Haynie* stands for two propositions. First, in an employment discrimination suit brought pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.*, an award of attorney fees and costs to the prevailing defendant is improper unless the case is frivolous, unreasonable or without foundation. Second, even if the action was without foundation, the losing plaintiff's financial situation must be considered before he is assessed with costs or attorney fees.

It was on the basis of this second proposition that this court entered its order of August 30, 1988. However, the first proposition also renders an award inappropriate in this case. Clearly, since the plaintiff won at the trial level, it cannot be argued that plaintiff's case was "frivolous, unreasonable, or without foundation." Accordingly, *Haynie* appears to direct a denial of costs in this situation. Nevertheless, as will be discussed in more detail later, certain other of the Sixth Circuit's opinions cast doubt on the validity of this first proposition. Accordingly, this court will enter its order based simply on the second proposition.

■ While apparently conceding the validity of this second proposition in general, defendant argues that the facts of the instant case are distinguishable from *Haynie* and therefore the requirement of examining the plaintiff's financial status should not apply. Defendant's attempted distinction is that "defendant's bill of costs is brought under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920," whereas "the issue in *Haynie* was whether the defendants therein were entitled to their attorney's fees and costs as prevailing parties under 42 U.S.C. § 1988 in a discrimination suit brought under 42 U.S.C. §§ 1981 and 2000e *et seq.*" Defendant's brief in support of Motion for Relief, pp. 2, 3. The defendant goes on to assert that "[t]he standard for a prevailing defendant in a discrimination action to recover its attorneys' fees and costs under 42 U.S.C. § 1988 is very demanding, arguably too demanding." Defendant's Brief, p. 2. Yet it urges a much more lenient standard be applied in its own case.

Broken down to its basics, defendant's argument is as follows:

1. The prevailing defendant in a 42 U.S. C. § 1981 and § 2000e action may properly attempt to receive an award of attorney fees *and* costs pursuant to 42 U.S.C. § 1988 [or 2000e–5(k)]. *Haynie v. Ross Gear Division of TRW, Inc.*

2. If the defendant attempts the aforementioned in proposition 1, it is subjected to a very demanding standard.

3. The very demanding standard mentioned in proposition 2 is that fees and costs can only be awarded if the action was "frivolous, unreasonable or without foundation."

4. The requirement in *Haynie* to examine a plaintiff's ability to pay costs is simply a corollary to "the very demanding standard" mentioned in proposition 2.

5. The court is not to consider the plaintiff's ability to pay costs in those cases where the defendant is not subjected to the "very demanding standard" of proposition 2.

6. The defendant in this case seeks costs only pursuant to F.R.Civ.P. 54(d) and 28 U.S.C. § 1920.

7. Since the defendant is not seeking costs and fees pursuant to 42 U.S.C. § 1988 or 2000e–5(k), the defendant is not subjected to the very demanding standard of proposition 2.

8. Since defendant is not subjected to the very demanding standard, consideration of the plaintiff's ability to pay costs is irrelevant to their assessment.

Assuming for the moment the truth of defendant's proposition that the *Haynie* defendant properly proceeded under 42 U.S.C. § 1988 to receive costs, defendant's efforts to distinguish *Haynie* from the case at bar are to no avail. It is important to note that the underlying action in the instant case is almost exactly like that in *Haynie*. Both were employment racial discrimination suits brought pursuant to 42 U.S.C. §§ 1981 and 2000e *et seq.* Defendant concedes that a very demanding standard, in-

cluding examination of ability to pay, applied to the Haynie prevailing defendant's efforts to receive costs. Yet, defendant still tries to receive a less demanding standard for itself by asking for costs pursuant to a different provision—28 U.S.C. § 1920 and F.R.Civ.P. 54(d). Title 28 U.S.C. § 1920 and F.R.Civ.P. 54(d) apply generally to all cases unless there is specific contrary guidance.

The flaw in defendant's argument is obvious. If there is a specific provision governing assessment of costs for a certain type of action, the standards set by that specific provision cannot be avoided by simply proceeding under a more favorable provision which applies to cases generally. Yet that is exactly what defendant is trying to do. Defendant's underlying action is the same type of action present in Haynie. And defendant concedes the presence of a specific provision making prevailing defendants in that type of action face a difficult standard for getting costs. Yet defendant tries to avoid that hurdle by saying that it wants costs under a different provision—the general costs provision. Defendant cannot pick and choose. If Congress or the courts have provided through 42 U.S.C. § 1988 or 2000e–5(k) a difficult standard for defendants to achieve costs in an employment discrimination action, that specific directive must be obeyed. Thus, under defendant's argued distinction from Haynie, defendant must lose.

Having shown that defendant must lose under its own argument, however, it becomes necessary to point out that defendant's alleged distinction from Haynie not only fails to help defendant, but is actually nonexistent! The beginning premise of defendant's entire argument is incorrect. It is true that a specific command must be followed when it conflicts with a general provision, but in reality there is no specific provision with regard to costs.

Title 42 U.S.C. § 1988 and 2000e–5(k) make no provisions for an award of costs. These provisions only make provision for an award of attorney fees by allowing them to be assessed "as part of the costs" in actions proceeding under 42 U.S.C.

§§ 1981 et seq. and 2000e et seq. Thus, costs are still granted pursuant to the same provisions they are generally sought under—Rule 54(d) and 28 U.S.C. § 1920. The plain language of the statutes requires this interpretation. Furthermore, the Sixth Circuit has stated as much in Goostree v. Tennessee, 796 F.2d 854, 864 (6th Cir.1986) ("The prevailing party in a civil rights action ... is in the same position as any other prevailing party with respect to costs available pursuant to 28 U.S.C. § 1920"). Hence, costs granted in Haynie must have been awarded pursuant to Rule 54(d) and 28 U.S.C. § 1920 despite the fact that the discussion of the costs was usually just thrown in as an afterthought to the discussion of attorney fees in Haynie. Consequently, the foundation of defendant's argument—the proposition that costs in Haynie were awarded pursuant to a different provision than that under which they are sought in the current case—evaporates into thin air. Haynie and the current case are exactly alike for present purposes, and therefore the Sixth Circuit's instructions in Haynie to consider ability to pay costs must be followed.

Of course, the defendant may argue that Haynie imposed a judicial interpretation upon 42 U.S.C. §§ 1988 and 2000e–5(k) which makes them not only the authority for a grant of attorney fees, but also for costs. If such were the case (although the court believes it is not), this still would not benefit the defendant. It just brings the analysis back to the previously discussed point that if there is a specific provision applying to an action, that provision must supersede the general provision.

■ Actually, however, a credible argument for defendant's desired result does exist even though not raised by the defendant. This argument is based on inconsistencies between Haynie and certain other Sixth Circuit cases. As already noted, the Haynie court ruled out attorney fees and costs for one of the defendants because the action against that defendant had not been frivolous, unreasonable or without foundation. However, this directly contradicts the holding by a different panel of the

Sixth Circuit less than a month earlier. In *Goostree, supra,* the Sixth Circuit reversed the trial court for denying costs because the case was not frivolous. *Goostree* at 864. As discussed above, the *Goostree* court held that costs in a civil rights action were awarded pursuant to a different provision than that which authorized attorney fees. Hence it also excluded costs from the judicial interpretation placed on 42 U.S.C. § 1988 and 2000e–5(k) concerning the necessity of a frivolous case before a prevailing defendant could be awarded expenses in a civil rights action.

This contradiction between the cases leaves several logical possibilities. First, Haynie may completely supersede *Goostree* and overrule it wherever there is an inconsistency. If this is indeed the case, defendant must lose for the reasons discussed above. If *Haynie* imposed costs through Rule 54(d) and 28 U.S.C. § 1920, then the same requirement to examine plaintiff's financial condition must also be placed on the current defendant's attempt to receive costs via Rule 54(d) and § 1920. On the other hand, if *Haynie* imposed costs under the authority of 42 U.S.C. § 1988 or 2000e–5(k), then that specific provision and its accompanying requirement of financial inquiry must also be the provision under which the current defendant seeks his costs.

A second logical possibility is that *Goostree* correctly states the rule that a frivolous case is not a prerequisite to an award of costs. At the same time, however, this second view also holds that *Haynie* properly required an examination of the losing plaintiff's financial position before charging that party with all costs as well as attorney fees. Under this view, the application of the frivolousness requirement to costs in *Haynie* is seen as the result of accidentally lumping a small costs award with analysis of a large attorney fee award. The financial ability inquiry, however, is viewed as an issue completely divorced from the theoretical basis of the frivolousness requirement. Thus, the accidental lumping of costs and fees when discussing the relevance of the frivolousness of the case would have no impact on the joint discussion of the relevance of wealth (or lack thereof) to an award of fees and costs.

Only the third possibility provides the defendant with the result he wants in this case. This approach begins the same as the second. Again the *Goostree* rule prevails with regard to costs being possible for a prevailing defendant even though the action was not frivolous. This view also sees the conflict between *Goostree* and *Haynie* on this issue as the consequence of accidentally lumping costs with attorney fees in the analysis of the relevance of frivolousness. However, this view also sees that lumping as having tainted the financial inquiry analysis. Ability to pay attorney fees is deemed relevant, but not ability to pay costs. Statements to the contrary in *Haynie* are simply seen as the result of the same unfortunate failure to isolate costs analysis from attorney fees analysis.

Summarizing for the sake of clarity, the analytical framework up to this point is as follows. *Haynie*, on its face, stands for two propositions relevant to the present case. The first proposition is that neither costs nor attorney fees may be assessed against a losing civil rights plaintiff unless the action was frivolous, unreasonable, or without foundation. The second proposition is that a plaintiff's financial situation is relevant to both an assessment of costs and of attorney fees. *Goostree*, on the other hand, stands for the proposition that costs may be awarded against a losing plaintiff even if the action was not frivolous. This conflict between *Goostree* and *Haynie*, then, leaves three logical possibilities as the correct statement of law:

1. Both *Haynie* propositions are correct.

2. The *Goostree* proposition and *Haynie* proposition # 2 is correct.

3. The *Goostree* proposition is correct, and furthermore, ability to pay is not relevant to a costs assessment.

Further complicating matters are some other Sixth Circuit cases which appear to contradict the second *Haynie* proposition which is more directly at issue in this case

—the proposition that an inquiry into the plaintiff's ability to pay is required before he is taxed with costs. Naturally these cases would thereby lend support to the third possibility just discussed. However, as will be discussed below, these cases are much older than *Haynie*, and, furthermore, they can arguably be distinguished from *Haynie*. Consequently, they do not necessarily settle the issue.

In *Lewis v. Pennington*, 400 F.2d 806, 819 (6th Cir.1968), the Sixth Circuit stated "that the ability of a party litigant to pay costs is [not] a valid criterion in assessing them." However, this statement was dictum and unnecessary to the *Lewis* opinion. Furthermore, the case cited as authority for this statement, *Lichter Foundation, Inc. v. Welch*, 269 F.2d 142 (6th Cir.1959), did not involve an attempted assessment of costs against a losing plaintiff in a discrimination suit. Rather, it involved a district court's improper denial of costs to a prevailing plaintiff in a tax refund case. The district court had apparently denied the award on the grounds that the plaintiff could easily afford the costs since he had just received a large refund through his action.

There are two potential reasons why this difference in parties and in the nature of the actions may be of legal significance and thereby distinguish *Lichter* and *Haynie* rather than leave them in conflict. These two reasons correspond with the reasons why the *Haynie* court may have considered the plaintiff's financial status relevant in the first place.

One potential theoretical basis for distinguishing *Lichter* from *Haynie* is the reasoning behind the "frivolousness requirement" imposed upon prevailing defendants who try to receive attorney fees pursuant to 42 U.S.C. § 2000e–5(k). As articulated in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the frivolousness requirement was seen simply as the best way to effectuate the legislative intent behind § 2000e–5(k). The statute had been enacted primarily with plaintiffs in mind. Its purpose was to encourage meritorious civil rights actions by removing a serious deterrent—the looming threat of large attorney fees. Thus the statute provided for attorney fees to be awarded "as part of the costs," supposedly making it much more unlikely that the plaintiff would have to pay any attorney fees. However, the purpose of the statute would not be served very well as long as prevailing defendants would also be awarded attorney fees almost as a matter of course. Such a standard would deter plaintiffs from bringing a close case for fear of not only having to pay their own attorneys' fees, but also attorney fees of the other side. Consequently, to promote the strong public policy behind bringing potentially meritorious discrimination actions, the Supreme Court in *Christiansburg Garment* stated that plaintiffs would not be assessed with attorney fees unless the action had been frivolous, unreasonable, or without foundation. *Christiansburg Garment*, 434 U.S. at 421, 98 S.Ct. at 700, 54 L.Ed.2d at 657.

Conceivably, *Haynie's* requirement to consider a losing plaintiff's ability to pay fees before being assessed with them is a corollary to this principle. After all, this requirement does make it more difficult for a plaintiff to be assessed with fees, thereby supposedly encouraging more of these actions which are in the public interest. This same dynamic could then also be a reason to make financial condition relevant to assessing costs. This is in essence the theory behind defendant's argument in its motion for relief from this court's August 30, 1988 order. In its motion, the defendant implicitly argued that the requirement to examine plaintiff's ability to pay costs was simply a part of the "demanding standard" imposed on prevailing defendants by § 2000e–5(k).

If this was indeed the reasoning behind the *Haynie* court's decision to make ability to pay relevant, then certainly this adequately harmonizes the only apparent conflict between *Lichter* and *Haynie*. The deterrent-removing purpose behind consideration of financial status in *Haynie* would not have been presented in *Lichter*, since that case involved a wealthy plaintiff being, in essence, denied costs because he

was wealthy. Certainly that type of "consideration of financial ability" would not promote the bringing of suits in the public interest. Furthermore, the nature of the action in *Lichter* was very different. There is a much stronger public policy behind encouraging legitimate discrimination actions than tax refund suits. Thus, *Lichter* and *Lewis* arguably do not contradict *Haynie* proposition # 2.

Unfortunately, however, there are two problems with this attempt at harmonization. First of all, it probably misrepresents the reasoning behind making ability to pay relevant. Secondly, it directly clashes with the *Goostree* proposition despite the fact that the *Goostree* proposition is better supported in reason than its contradictory *Haynie* proposition # 1.

The rationale for making ability to pay relevant to an assessment of costs and attorney fees was mostly unexplained in *Haynie*. The few hints given suggested simply that it was a matter of considering the equities of the situation. Other circuits appear to be in accord. *See Badillo v. Central Steel and Wire Co.*, 717 F.2d 1160, 1165 (7th Cir.1983); *National Organization for Women v. Bank of California*, 680 F.2d 1291, 1294 (9th Cir.1982). There was no indication in *Haynie* that the factor was created as a corollary to the "very demanding standard" imposed on prevailing civil rights defendants so as to not discourage plaintiffs from bringing potentially meritorious actions. Furthermore, while consideration of plaintiff's ability to pay costs might have a little impact on encouraging actions, it would not be very significant. Thus, it appears unlikely that this was the motivating force behind the requirement.

Additionally, if one adopts the encouragement of potential actions in the public interest as the theoretical basis for the financial inquiry requirement, one also invites indirect conflict with *Goostree*. Again, the *Goostree* proposition is that a frivolous action is a prerequisite to an award of attorney fees to a prevailing defendant, but not of costs. As already discussed, the reasoning behind the frivolousness requirement is to encourage plaintiffs to bring potentially meritorious discrimination actions. Yet the *Goostree* court declined to encourage these actions by applying the frivolousness requirement to costs. To argue that ability to pay should be used to encourage these actions is thus opposed to the *Goostree* idea that no authority existed for using costs standards to encourage these type of actions.

Arguably, the clash with *Goostree* caused by this attempt to harmonize *Lichter* and *Haynie* simply supports *Haynie* proposition # 1 in its battle with the *Goostree* proposition. In other words, the harmonized interpretation of *Lichter* weakens the validity of the *Goostree* proposition. This in turn would make possibility # 1 the more likely correct statement of law. However, *Goostree* is really the better reasoned position. The frivolousness requirement was a judicial interpretation necessary to advance the purpose of a specific legislative provision. That provision dealt only with attorney fees. When dealing with costs, one has no legislative provision granting authority to impose standards on cost awards which would promote the bringing of discrimination actions. The only arguable authority for such a position is that since the fees provision speaks of awarding fees as costs, then any standards placed on an award of fees should also be placed on costs. However, *Christiansburg Garment* gave no indication that this should be done. Furthermore, the traditional distinction between standards for awarding costs and attorney fees supports the argument that judicially imposed limits on fees awards should not be automatically imposed on costs awards. Thus it appears that this attempt to harmonize *Lichter* with *Haynie* should fail, and consequently *Lichter* contradicts *Haynie* proposition # 2. This in turn thereby lends credence to the correctness of possibility # 3.

There is, however, a second theoretical basis for distinguishing *Lichter* from *Haynie* instead of leaving them in conflict. Under this line of reasoning, the rationale behind *Haynie's* consideration of ability to pay is simply that it is an equitable factor to be examined. Equitable factors are sim-

ply considerations of fairness or reasonableness. Applied to the present issue, equitable factors are those considerations which would make it unfair or unreasonable to charge a certain party with the costs of the other party. One example is "where the prevailing party should be penalized for unnecessarily prolonging trial or for injecting unmeritorious issues." *White & White, Inc. v. American Hospital Supply Corporation,* 786 F.2d 728, 730 (6th Cir.1986). *White & White* also adds that

> [s]uch circumstances include cases where taxable expenditures by the prevailing party are "unnecessary or unreasonably large," ... cases where the prevailing party's recovery is so insignificant that the judgment amounts to a victory for the defendant, *Lichter,* 269 F.2d at 146, and cases that are "close and difficult." *United States Plywood Corp. [v. General Plywood Corp.],* 370 F.2d [500] at 508 [6th Cir.1966].

All of these factors relate to the fairness of charging the loser with certain costs. Naturally it is "unfair" to charge a party with costs caused by the prevailing party "unnecessarily prolonging trial or ... injecting unmeritorious issues." However, the mere fact that a prevailing party is wealthy, as in *Lichter,* does not necessarily mean that it is unfair to charge the losing party with costs. On the other hand, a losing party may himself be so poor that it would be unfair or unreasonable to make him pay costs—especially when his case was brought in good faith and with a reasonable chance of winning. Thus, it is possible for ability to pay to be irrelevant in *Lichter* but important in *Haynie.*

Although not forced to choose between possibility #1 or possibility #2 in this case, since only ability to pay is directly at stake, the court finds this latter reasoning persuasive. This position avoids as much conflict as possible between *Haynie* and other Sixth Circuit cases. Furthermore, since *Haynie* is the most recent pronouncement of the Sixth Circuit on this issue, and since its facts are almost exactly like that of the case at bar, this court feels compelled to follow *Haynie's* directions concerning inquiry into ability to pay until such time as the Sixth Circuit gives additional guidance.

▇ Accordingly, the court does consider the plaintiff's financial situation in this case. Furthermore, plaintiff has now submitted an affidavit which shows that his financial situation is even worse than at the time of this court's August 30 order since his unemployment benefits have now terminated. Consequently, this court finds that costs should not be assessed against the plaintiff.

▇ The court also finds that it is the current financial situation of the plaintiff which is relevant—not his economic status at the time defendant originally submitted his proposed bill of costs. After all, it is the current point in time at which the costs are actually being assessed. If ability to pay is simply a factor going to a determination of the equities of assessing costs, the only time it is relevant to the equitable situation is when it is actually assessed.

▇ For the above discussed reasons, this court would be inclined to deny taxation of any costs against the plaintiff. However, this court interprets the Sixth Circuit's judgment in this case issued as mandate on July 15, 1987 as ordering that the $510.55 costs related to the appeal be taxed against the plaintiff. Accordingly, the court will issue an order directing that costs in the amount of $510.55 be taxed against the plaintiff. With regard to all other disputed costs, however, it will be ordered that "each one shall bear his own load."[1]

An appropriate order will be entered.

---

1. Galatians 6:5, New American Standard Bible.