872 P.2d 899

Laura Candice GALLEGOS, a minor, By and Through her parents and legal guardians, Aurora GALLEGOS and Eugene Gallegos, Plaintiff–Appellant/Cross–Appellee,

v.

SOUTHWEST COMMUNITY HEALTH SERVICES, d/b/a Presbyterian Hospital Center, Defendant–Appellant,

and

C. Colbert Bollinger, M.D., OB–GYN Associates, Ltd., Samuel Smith, M.D., Crosby Eaton, M.D., Frederick Cohn, M.D., Milton Godinez, M.D., Kusum Prabhakar, M.D., and Anesthesia Medical Consultants, f/k/a Albuquerque Anesthesia Services, Inc., Defendants–Appellees/Cross–Appellants.

No. 13919.

Court of Appeals of New Mexico.

March 8, 1994.

Certiorari Denied April 14, 1994.

Sheldon J. Schlesinger, Fort Lauderdale, FL and Daniel Shapiro, Shapiro & Bettinger, Albuquerque, for plaintiff-appellant/cross-appellee.

W. Robert Lasater, Jr. and Ellen G. Thorne, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for Southwest Community Health Services.

Alice Tomlinson Lorenz, Ranne B. Miller, and Gregory W. Chase, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for Dr. Bollinger and OB–GYN Associates, Ltd.

Richard L. Puglisi and Lorri Krehbiel, Madison, Harbour, Mroz & Puglisi, P.A., Albuquerque, for Drs. Smith, Eaton, Cohn, and Godinez.

Ronald W. Henkel, Henkel, Sloan & Gay, P.C., Albuquerque, for Dr. Prabhakar and Anesthesia Medical Consultants.

## OPINION

APODACA, Judge.

Plaintiff appeals from a judgment entered in favor of Defendants after a jury trial of Plaintiff's medical malpractice suit. In the direct appeal, Plaintiff argues that the trial

court: (1) abused its discretion in granting twenty peremptory challenges to all Defendants; (2) erred in denying Plaintiff additional peremptory challenges, and that SCRA 1986, 1–038(E) (Repl.1992) violates her right to equal protection of the laws; and (3) erred in not granting a new trial based on juror misconduct. In the cross-appeal, three of the four groups of Defendants argue that the trial court abused its discretion in denying their motions for an award of costs. Defendant Southwest Community Health Services is not involved in the cross-appeal.

We hold that the trial court did not abuse its discretion in granting twenty peremptory challenges to Defendants and in refusing to grant a new trial based on juror misconduct. We also hold that SCRA 1–038(E) does not authorize the granting of additional peremptory challenges to equalize the total number of such challenges granted to all plaintiffs and all defendants, and that the rule is not unconstitutional. Finally, we hold that the trial court's denial of Defendants' motions for costs was not an abuse of discretion. We thus affirm the trial court on all issues raised on both the appeal and cross-appeal.

BACKGROUND

Laura Candice Gallegos (Plaintiff or Laura) was born on February 26, 1981. It became apparent shortly after her birth that she was not a normal baby. At time of trial, Laura was ten years old and functioning at the level of a one- to three-month-old child. Laura, by and through her parents, Eugene and Aurora Gallegos, sued the nine individuals or entities that provided medical care during Mrs. Gallegos' pregnancy and Laura's delivery: C. Colbert Bollinger, M.D., Mrs. Gallegos's primary obstetrician, and his practice association, OB–GYN Associates, Ltd. (collectively referred to as Dr. Bollinger); Southwest Community Health Services, doing business as Presbyterian Hospital Center (the Hospital), the hospital that conducted some prenatal tests and in which Mrs. Gallegos delivered Laura; Samuel Smith, M.D., Crosby Eaton, M.D., Frederick Cohn, M.D., and Milton Godinez, M.D. (collectively referred to as the Prenatal Defendants), the obstetricians who worked for OB–GYN Associates and who saw Mrs. Gallegos occasional-

ly during her pregnancy; and Dr. Kusum Prabhakar, the anesthesiologist who saw Mrs. Gallegos briefly during her delivery, and her practice association, Anesthesia Medical Consultants, formally known as Albuquerque Anesthesia Services, Inc. (collectively referred to as Dr. Prabhakar). For ease of reference, we will refer in this opinion to the four groups of defendants as Dr. Bollinger, the Hospital, the Prenatal Defendants, and Dr. Prabhakar.

Discovery and pretrial practice in this case took several years; the trial consumed seven weeks. The jury returned with a verdict in favor of all Defendants. Plaintiff filed a motion for a new trial, which was denied. Defendants filed a motion for an award of costs totaling $127,112.94 against Plaintiff. The trial court found the costs to be reasonable and necessary, but ordered all parties to bear their own costs. Additional facts will be discussed as relevant.

DISCUSSION

I. *Peremptory Challenges.*

Before trial, Dr. Prabhakar filed a motion asking that she be allowed five peremptory challenges during jury selection. The trial court heard argument on Dr. Prabhakar's motion and all the other Defendants who had not yet filed such a motion were allowed to be heard. Plaintiff argued that Defendants' interests were not sufficiently diverse to justify the granting of additional peremptory challenges to them. Plaintiff alternatively argued that, if the trial court gave each of the four Defendants five peremptory challenges, principles of equal protection as guaranteed by the New Mexico and federal constitutions required the trial court to give Plaintiff twenty peremptory challenges as well. Ultimately, the trial court ordered that each of the four groups of Defendants be given five peremptory challenges, for a total of twenty peremptory challenges allocated to all Defendants, and denied Plaintiff's motion for an equal number of challenges. On appeal, Plaintiff argues against both of these rulings. These arguments will be addressed separately.

A. *The Trial Court Did Not Abuse Its Discretion in Granting Each of the Four Defendants Five Peremptory Challenges.*

The number of peremptory challenges allocated to the parties on each side of a lawsuit is governed by SCRA 1–038(E). For civil cases tried by a twelve-person jury, SCRA 1–038(E) provides that "each party may challenge five jurors peremptorily." When there are multiple parties on one or both sides of the lawsuit, the rule requires that the number of peremptory challenges allocated to that side be exercised by the parties jointly. However, SCRA 1–038(E) also provides that, if the interests of multiple parties on the same side of the lawsuit are "diverse," the trial court shall allow each party on that side of the lawsuit five peremptory challenges. Because the decision necessarily must be made before the beginning of trial, the trial court's decision is based on the pleadings in the case and the assertions of the parties. *Carraro v. Wells Fargo Mortgage & Equity,* 106 N.M. 442, 445, 744 P.2d 915, 918 (Ct. App.), *cert. denied,* 106 N.M. 439, 744 P.2d 912 (1987).

In determining whether additional challenges will be allowed, the trial court may consider " '(1) whether the parties employed the same attorneys; (2) whether separate answers were filed; (3) whether the [parties'] interests were antagonistic; and, (4) in a negligence claim, whether different independent acts of negligence are alleged in a suit governed by comparative negligence.' " *Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 734, 779 P.2d 99, 111 (1989) (quoting *Carraro,* 106 N.M. at 445, 744 P.2d at 918). On the question of whether the interests of multiple defendants are diverse, the trial court should consider the extent to which the alleged diversity of interest will affect the choice of individual jurors when considered in light of the common interests of the defendants as against the interests of the plaintiff or plaintiffs in the selection of jurors. *Id.* The decision to allocate additional challenges to multiple parties on the same side of a lawsuit is within the trial court's discretion and is reviewed on appeal only for an abuse of discretion. *Id.*

In this appeal, there were nine separate defendants who essentially have been treated throughout trial and on appeal as four defendants. These four groups of De-fendants filed different answers and were represented by different attorneys throughout the proceedings. Although all four Defendants were alleged to have breached the standard of care, different specific acts of commission or omission were alleged against each Defendant. For example, Plaintiff alleged that Dr. Bollinger breached the standard of care by not properly performing a version procedure, by not timely arriving at the Hospital for the delivery, and by not performing a Caesarian section. The Hospital was alleged to have breached the standard of care by failing to call another doctor when Dr. Bollinger did not arrive promptly at the Hospital. Plaintiff alleged that Dr. Bollinger and the Prenatal Defendants breached the standard of care because they did not order early ultrasound testing to ascertain Mrs. Gallegos' due date, because they did not deliver Laura when Mrs. Gallegos was forty-two weeks pregnant, and because they failed to properly coordinate their care of Mrs. Gallegos. Dr. Bollinger, the Prenatal Defendants, and the Hospital were alleged to have breached the standard of care by not properly interpreting a non-stress test. Dr. Bollinger and the Hospital were alleged to have breached the standard of care by failing to ensure that there was continuous fetal heart monitoring during delivery. Dr. Bollinger and Dr. Prabhakar were alleged to have breached the standard of care by failing to have a backup anesthesiologist available when Dr. Prabhakar was called away during the delivery. In addition, Dr. Prabhakar was alleged to have breached the standard of care by leaving Mrs. Gallegos during the delivery. We believe this recitation of Plaintiff's claims demonstrates Defendants' diverse and potentially conflicting interests. We thus hold the trial court did not abuse its discretion in giving each Defendant five peremptory challenges.

B. *SCRA 1–038(E) Does Not Authorize the Trial Court to "Equalize" the Number of Peremptory Challenges and Does Not Violate Equal Protection.*

Before addressing the merits of this issue, we address two preliminary questions raised by Defendants. Defendants first contend that Plaintiff has waived review of this issue

either because Plaintiff failed to make a record of which jurors she would have stricken if she had had additional challenges or because Plaintiff failed to use all her peremptory challenges, or both. We believe both of these points raise the issue of whether Plaintiff was prejudiced by the alleged error, and because of our disposition, we need not address them, as noted below. *State v. Hoxsie*, 101 N.M. 7, 10, 677 P.2d 620, 623 (1984) (assertion of prejudice is not a showing of prejudice, and appellate court will not reverse in absence of prejudice), *overruled on other grounds by Gallegos v. Citizens Ins. Agency*, 108 N.M. 722, 731, 779 P.2d 99, 108 (1989); *Sheraden v. Black*, 107 N.M. 76, 80, 752 P.2d 791, 795 (Ct.App.1988) (appellate court will only correct errors that affect the result).

▆▆▆ Additionally, to preserve an issue for appeal, the party seeking to raise the issue must affirmatively demonstrate that the issue was raised below and a ruling of the trial court invoked on the issue. *See, e.g., City of Albuquerque v. Sanchez*, 113 N.M. 721, 725, 832 P.2d 412, 416 (Ct.App.1992). In this case, Plaintiff clearly raised the equal protection argument below, and the trial court ruled against her on that issue. Thus, we hold that Plaintiff has not waived the issue on appeal and can raise it.

Second, in response to the Hospital's contention that we should not reach the merits of this appeal based on comity between this Court and our Supreme Court, we do not believe this Court is prohibited from considering Plaintiff's arguments simply because the arguments, if successful, would require us to hold that a procedural rule promulgated by our Supreme Court is unconstitutional. We recognize that this Court cannot overrule New Mexico Supreme Court precedent. *See Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973). However, our Supreme Court recently modified *Alexander* and held that this Court could review the validity of uniform jury instructions and was precluded only from overruling instructions that our Supreme Court has considered in actual cases. *State v. Wilson*, 116 N.M. 793, 795–96, 867 P.2d 1175, 1177–78 (N.M.1994). We believe this holding is applicable to all rules

promulgated by our Supreme Court. Because our Supreme Court has not previously considered the constitutionality of SCRA 1–038(E), *see Carraro*, 106 N.M. at 444, 744 P.2d at 917 (refusing to address plaintiff's constitutional argument because not raised below), we are therefore not precluded from considering Plaintiff's arguments.

Based on our discussions below, we hold that SCRA 1–038(E) does not authorize an "equalization" of peremptory challenges and does not violate Plaintiff's rights to equal protection under the New Mexico or federal constitutions. Because we have reached this decision based on the merits of Plaintiff's arguments, it is not necessary to address the question of whether Plaintiff was prejudiced by the trial court's ruling. This necessarily includes not having to reach Defendants' arguments on waiver.

### 1. *"Equalization" of Challenges.*

▆▆▆ Plaintiff argues that this Court should construe SCRA 1–038(E) to authorize giving her a number of peremptory challenges equal to the number given to all Defendants. However, the rule's plain language authorizes granting additional peremptory challenges only to multiple parties with diverse interests that are on the same side of the lawsuit. *Carraro*, 106 N.M. at 444, 744 P.2d at 917. The trial court cannot grant a party additional peremptory challenges in a manner that is not contemplated by SCRA 1–038(E). *Id.; see also Morris v. Cartwright*, 57 N.M. 328, 331, 258 P.2d 719, 721–22 (1953) (former law); *American Ins. Co. v. Foutz & Bursum*, 60 N.M. 351, 354–57, 291 P.2d 1081, 1083–84 (1955) (recognizing that the holding of *Cartwright* does not apply when there is a plaintiff, a defendant, and a third-party defendant). The rule could have easily provided for such additional challenges. Its failure to do so leads us to the conclusion that none were intended.

### 2. *Violation of Equal Protection.*

▆▆▆ Plaintiff argues that SCRA 1–038(E) violates her right to equal protection of the laws as guaranteed by the New Mexico and federal constitutions. *See* U.S. Const. amends. V, XIV, § 1; N.M. Const. art. II,

§ 18. We note at the outset that the tests for reviewing equal protection challenges are the same under New Mexico and federal law. *Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 693, 763 P.2d 1153, 1158 (1988).

Plaintiff first argues that the right to a fair and impartial jury is explicitly guaranteed by the New Mexico Constitution and therefore a party's right to receive peremptory challenges should be treated as a fundamental right for equal protection analysis. *See id.* (statute infringing upon a fundamental constitutional right is analyzed under strict scrutiny standard). We assume without deciding that Plaintiff had a right to a jury trial in this case, and that the right to a jury trial includes a right to an impartial jury. *See* N.M. Const. art. II, § 12 ("The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate."). However, even assuming the existence of these rights, we do not believe that it necessarily follows that peremptory challenges are a fundamental right.

 Both the United States Supreme Court and the New Mexico Supreme Court have held that the right to an impartial jury does not include a right to peremptory challenges. *Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988); *Stilson v. United States,* 250 U.S. 583, 586–87, 40 S.Ct. 28, 29–30, 63 L.Ed. 1154 (1919); *State v. Sutphin,* 107 N.M. 126, 128, 753 P.2d 1314, 1316 (1988). As our Supreme Court has observed, "[t]here is no constitutional right, either federal or state, which affords [a] defendant peremptory challenges. The only right guaranteed is the right to a fair trial. U.S. Const. amend. VI; N.M. Const. art. II, §§ 14 & 18. The number of challenges to be afforded a defendant is a privilege properly controlled by a court rule." *Sutphin,* 107 N.M. at 128, 753 P.2d at 1316. Because the right to peremptory challenges is not a fundamental constitutional right, we will not apply the strict scrutiny standard of review. *See Richardson,* 107 N.M. at 693, 763 P.2d at 1158. We believe the appropriate test to apply in reviewing SCRA 1–038(E) is the minimum scrutiny or rational basis test. *See Trujillo v. City of Albuquer-*

*que,* 110 N.M. 621, 628, 798 P.2d 571, 578 (1990) (tort victims not considered a " 'suspect class' "); *Meyer v. Jones,* 106 N.M. 708, 711, 749 P.2d 93, 96 (1988) (rational basis is the appropriate level of scrutiny when the classification is not suspect and the fundamental right to a jury trial is not implicated); *Richardson,* 107 N.M. at 693, 763 P.2d at 1158 (legislation is presumptively valid and normally subject to rational basis test).

 Under the minimum or rational basis level of scrutiny, SCRA 1–038(E) is presumed constitutional, and the burden is on Plaintiff to demonstrate that it is clearly arbitrary and unreasonable, not just that it is possibly so. *Richardson,* 107 N.M. at 693, 763 P.2d at 1158. " 'The general rule is that legislation [ . . . ] will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.' " *State v. Neely,* 112 N.M. 702, 708, 819 P.2d 249, 255 (1991) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)).

 Plaintiff contends that SCRA 1–038(E) creates two classes of plaintiffs, those who are injured by a single wrongdoer and those who are injured by multiple wrongdoers. However, SCRA 1–038 is party neutral, meaning that it applies with equal force to plaintiffs and defendants. Additionally, the basis of classification employed by the rule is not the number of parties on one side of the suit or the other; instead, the classification is based on the similarity or diversity of the interests of the parties on the same side of the lawsuit. If the interests of one party are diverse from those of other parties on the same side, then that party is entitled to additional peremptory challenges. The diversity or lack of diversity of interests among parties on the same side of a lawsuit is a rational means for determining the allocation of peremptory challenges because, when the parties' interests are diverse, there is likely to be conflict among the parties on the "same side" and they are likely to be unable to use their peremptory challenges jointly. *See American Ins. Co.,* 60 N.M. at 354–57, 291 P.2d at 1083–84 (third-party defendant allowed additional peremptory challenges because, due to the conflict between

the defendant and the third-party defendant, they cannot be deemed one party); *accord Stitt v. Mahaney,* 72 Mich.App. 120, 249 N.W.2d 319, 321 (1976) (no denial of equal protection where defendants granted total of twelve peremptory challenges and plaintiff only three), *rev'd on other grounds,* 403 Mich. 711, 272 N.W.2d 526 (1978).

## II. *Trial Court did not Abuse its Discretion In Refusing to Grant Plaintiff a New Trial.*

After trial, Plaintiff moved for a new trial based in part on what Plaintiff characterized as "possible juror misconduct." The motion was supported by an affidavit from Mr. Gallegos, in which he stated that, during the second day of deliberations and immediately before the jury returned with its verdict, he overheard an alternate juror tell another person that one juror had called her to tell her that there would be a verdict that day. Plaintiff's motion argued that the trial court should have authorized discovery from the alternate juror and the juror to whom the alternate had spoken, to determine the facts concerning the contact and whether additional discussions of the case had occurred. The trial court denied the motion. On appeal, Plaintiff argues that Mr. Gallegos' affidavit established that there had been improper communications between a juror and an alternate juror, and that this fact mandates reversal.

Defendants contend that this Court should not address this issue because it was not properly raised and preserved below. *See Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496–97, 745 P.2d 717, 721–22 (Ct.App.1987) (an issue cannot be raised on appeal unless it was raised in the trial court and a ruling invoked). We prefer to assume the issue was preserved and reach the merits. On the merits, we reject Plaintiff's contention.

■ *State v. Melton,* 102 N.M. 120, 692 P.2d 45 (Ct.App.1984), sets out the appropriate analysis to determine whether extraneous material improperly reached the jury. The first step is to determine whether an improper communication occurred. *Id.* at 122–23, 692 P.2d at 47–48. After it has been established that such a communication has occurred, a presumption of prejudice arises.

*Id.* at 123, 692 P.2d at 48. The party resisting a new trial then has the burden of proving the communication was harmless. *Id.* We review the trial court's decisions regarding whether the presumption of prejudice has been overcome for an abuse of discretion. *Id.*

■ Plaintiff contends that Mr. Gallegos' affidavit demonstrated that the juror who allegedly spoke with the dismissed alternate juror violated two jury instructions: SCRA 1986, 13–106(1) (Repl.1991), and SCRA 1986, 13–201 (Repl.1991). SCRA 13–106(1) advises jurors that, "[d]uring recesses and adjournments, while this case is in progress, you should not discuss the case with other jurors or with anyone else." SCRA 13–201 similarly admonishes jurors not to discuss the case with other persons during any recess. We disagree with Plaintiff's characterization of the communication in this appeal as a violation of SCRA 13–106 and 13–201. The communication concerned only the chronological progress of the trial and not the merits of the case. *Cf.* SCRA 1986, 11–606(B) (effective until December 1, 1993) (when validity of verdict is inquired into, juror may testify concerning whether extraneous prejudicial information was brought to jury's attention or outside influence brought to bear on any juror). Plaintiff cites no authority for the proposition that jurors may not discuss whether and when they expect a trial to finish, and her claim (that a juror mentioning such a matter is prejudicial) is mere supposition. On the contrary, there are sound, practical reasons for jurors' discussion of matters such as the chronology of the trial, so that they can make decisions concerning employment and other personal matters. Additionally, such communications *from* jurors do not indicate that, in making its decision, the jury improperly considered extraneous information. *Cf. State v. Chamberlain,* 112 N.M. 723, 733, 819 P.2d 673, 683 (1991) (trial court did not abuse its discretion in denying motion for further inquiry where there was no evidence that new evidentiary facts went before jury during deliberations). We thus conclude that the trial court did not abuse its discretion in denying Plaintiff's motion for new trial based on Mr. Gallegos' affidavit.

### III. The Trial Court Did Not Abuse Its Discretion in Refusing to Order Plaintiff to Pay Defendants' Costs in the Amount of $127,112.94.

The trial court held a post-trial hearing on Defendants' motions for costs. At the outset, Plaintiff's attorney indicated that Plaintiff was not attacking Defendants' bills of costs or suggesting that the costs were unreasonable. Instead, the attorney informed the trial court that there was no money to pay the costs. He pointed out that Laura was getting worse every day, that Mr. and Mrs. Gallegos had spent all of their time and money on Laura, and indicated that, if Plaintiff and her parents were ordered to pay Defendants' costs, the family would be forced to file for relief under the bankruptcy laws.

Counsel for Defendants did not contest the assertion that Laura's parents would be forced to file for bankruptcy if costs were awarded. Instead, he argued that Defendants wanted an award of costs to use as a negotiating tool in case Plaintiff appealed. Counsel indicated that he had his clients' permission to waive the award of costs if there was no appeal. He also argued that the unpaid costs award could be written off as a bad debt.

The trial court found that the expenses listed in the various bills of costs were reasonable and necessary, but declined to award costs, indicating that it was not going to force Mr. and Mrs. Gallegos into bankruptcy. Dr. Bollinger, the Prenatal Defendants, and Dr. Prabhakar have appealed the trial court's decision that each party shall bear its own costs; the Hospital has not. Dr. Bollinger argues that Plaintiff failed to prove that Mr. and Mrs. Gallegos were indigent, that the denial of costs amounts to an unfair penalty against him, and that Plaintiff was responsible for unnecessarily increasing the expense of litigation. The Prenatal Defendants argue that the denial of costs is a penalty that they did not deserve and that the evidence before the trial court was insufficient to support a finding of financial hardship. Dr. Prabhakar argues that New Mexico law does not authorize the trial court to consider the financial circumstances of the losing party in determining whether to award costs and that the

evidence before the trial court did not support a finding that Mr. and Mrs. Gallegos were indigent.

█ We observe, however, that several of these arguments are raised for the first time on appeal. They will therefore not be considered. See Woolwine, 106 N.M. at 496–97, 745 P.2d at 721–22. Thus, we will not address Dr. Bollinger's argument that Plaintiff unnecessarily increased the expense of litigation or the arguments that Plaintiff failed to prove indigency or financial hardship. Instead, we discuss only the scope of the trial court's discretion under SCRA 1986, 1–054(E) (Repl.1992), and the role that the financial circumstances of the parties may play in determining whether to award costs.

█ SCRA 1–054(E) provides that "costs shall be allowed as a matter of course to the prevailing party unless the court otherwise directs." As the rule's language suggests, costs are usually but not always awarded to the prevailing party. See Mascarenas v. Jaramillo, 111 N.M. 410, 415, 806 P.2d 59, 64 (1991) (affirming the trial court's denial of costs to the prevailing party as within its discretion). The assessment of costs in a civil action is a matter committed to the sound discretion of the trial court, and the trial court's determination will be reversed only for an abuse of discretion. Pioneer Sav. & Trust, F.A. v. Rue, 109 N.M. 228, 231, 784 P.2d 415, 418 (1989); South v. Lucero, 92 N.M. 798, 804, 595 P.2d 768, 774 (Ct.App.), cert. denied, 92 N.M. 675, 593 P.2d 1078 (1979).

Defendants' arguments on appeal rely on cases decided under Rule 54(d) of the Federal Rules of Civil Procedure. We acknowledge that the relevant language of the federal rule and the New Mexico rule is identical. Compare SCRA 1–054(E) with 28 U.S.C.A. Rule 54(d) (West.1992). Cases decided under the federal rule are often persuasive to this Court if they are not in conflict with controlling New Mexico authority and are based on sound logic and policies consistent with the law of this state. See Sundial Press v. City of Albuquerque, 114 N.M. 236, 239, 836 P.2d 1257, 1260 (Ct.App.1992) (involving SCRA 1986, 1–054(C)(1)); Fowler–Propst v.

*Dattilo,* 111 N.M. 573, 575, 807 P.2d 757, 759 (Ct.App.) (involving SCRA 1986, 1–060(B)), *cert. denied,* 111 N.M. 678, 808 P.2d 963 (1991). Based on cases decided under the federal rule, Defendants argue that there is a "strong" presumption that the prevailing party is entitled to costs, *see, e.g., Congregation of the Passion v. Touche, Ross & Co.,* 854 F.2d 219, 222 (7th Cir.1988), which presumption can be overcome only by a showing of misconduct, bad faith, or abusive tactics during the litigation. *See id.*

We believe that Defendants read SCRA 1–054(E) too narrowly. It is true that the federal courts have at times denied the prevailing party costs as a penalty for the conduct of the case. *See, e.g., Chicago Sugar Co. v. American Sugar Ref. Co.,* 176 F.2d 1, 11 (7th Cir.1949) (reversing the trial court's denial of costs to the prevailing party because the denial was based on action prior to litigation), *cert. denied,* 338 U.S. 948, 70 S.Ct. 486, 94 L.Ed. 584 (1950); *Remington Prods. v. North Am. Phillips Corp.,* 763 F.Supp. 683, 687–88 (D.Conn.1991) (affirming the trial court's denial of costs to the prevailing party based on the prevailing party's bad faith during discovery). However, we conclude that the scope of the trial court's discretion is not limited only to such situations. As Professor Moore has observed, the phrase "unless the court otherwise directs" states "an equitable principle; and, subject to the exceptions imposed by the Rule, vests in the district court a sound discretion over the allowance, disallowance, or apportionment of costs in all civil actions." James W. Moore et al., 6 *Moore's Federal Practice* ¶ 54.70[5] at 54–331 (2d ed. 1993) (footnotes omitted). The federal courts therefore approach the issue of awarding costs on a case-by-case basis, based on the equities of the situation. 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure, Civil 2d* § 2668 (2d ed. 1983). The losing party may overcome the presumption in favor of awarding costs to the winning party by showing "bad faith on the part of the prevailing party, or misconduct during the course of the litigation, or that an award would be unjust, or that other circumstances justify the penalty of denial of costs." Laura B. Bartell, "Taxation of Costs and Awards of Expenses in Federal Court," 101 F.R.D. 553, 560 (1984) (citations omitted). "The most common bases for denying costs to prevailing defendants have been the indigency of the losing plaintiff, coupled with good faith of the indigent and the non-frivolous nature of the case." *Id.* at 561 (citations omitted).

Federal courts have, on appropriate occasions, denied a prevailing defendant costs based on the plaintiff's inability to pay the costs award. *See Badillo v. Central Steel & Wire Co.,* 717 F.2d 1160, 1165 (7th Cir.1983); *Williams v. Hevi–Duty Elec. Co.,* 122 F.R.D. 206, 214 (M.D.Tenn.1988); *Schaulis v. CTB/ McGraw Hill, Inc.,* 496 F.Supp. 666, 680 (N.D.Cal.1980). Even courts that have not denied costs on that basis have indicated that the losing party's ability to pay is a proper factor to consider in determining whether to award costs. *Congregation of the Passion,* 854 F.2d at 222; *Maldonado v. Parasole,* 66 F.R.D. 388, 390 (E.D.N.Y.1975). As one court stated:

> It may well be desirable that the potential cost of unsuccessful litigation should act as a deterrent to litigation and an incentive for the parties to settle. But where the antagonists are very unevenly matched in size, resources, and stability, it would be unfortunate to use the possible taxation of costs as a sword of Damocles and so prevent a good faith defense. It is to inevitate such a result that the court's discretion is employed in such instances.

*Boas Box Co. v. Proper Folding Box Corp.,* 55 F.R.D. 79, 81 (E.D.N.Y.1971). In *Boas Box,* the defendant was a small business faced with a costs bill of $1,572.32. *Id.* at 80. We believe the principle applies with equal or even greater force to Plaintiff and her parents in this case, who are private persons faced with a costs bill of nearly $130,000.

In summary, Defendants sought costs in the total amount of almost $130,000. Common sense tells us that even persons who are not poverty stricken would have difficulty in paying a judgment in that amount. The evidence during trial indicated that Mr. Gallegos worked part-time for a wage of approximately $5.00 an hour and that Mrs. Gallegos did not work outside the

home for pay. Defendants did not argue, and the trial court did not find, that Plaintiff engaged in bad faith or abusive litigation tactics. Similarly, no one has suggested that Plaintiff's claims were frivolous. We therefore conclude that the trial court properly considered Plaintiff's and her parents' ability to pay as one factor to be considered in determining whether to award Defendants their costs. On these facts, we hold that the trial court did not abuse its discretion in ordering that the parties should bear their own costs.

## CONCLUSION

We hold that the trial court: (1) did not abuse its discretion in granting each of the four groups of defendants five peremptory challenges because the Defendants' interests were sufficiently diverse to justify the allocation of additional peremptory challenges to them; (2) did not err in denying Plaintiff's request for additional peremptory challenges because the plain language of SCRA 1–038(E) does not authorize the trial court to give either opposing parties additional peremptory challenges to equalize the number of peremptory challenges; (3) did not abuse its discretion in refusing to grant Plaintiff a new trial based on juror misconduct; and (4) did not abuse its discretion in considering Plaintiff's and her parents' ability to pay Defendants' costs or in ordering that the parties bear their own costs. Additionally, we determine that SCRA 1–038(E) does not violate equal protection. The trial court's judgment is therefore affirmed.

IT IS SO ORDERED.

ALARID and FLORES, JJ., concur.